# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| IN RE: POLARIS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | 18-CV-0939 (WMW-DTS) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Wendy J. Wildung (MN #117055)
Faegre Baker Daniels LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
Tel: (612) 766-7759
wendy.wildung@FaegreBD.com

Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
Paul Collier (admitted pro hac vice)
R. Allan Pixton (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL  60654-3406
Tel:  (312) 862-2000
Fax:  (312) 862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com
paul.collier@kirkland.com
allan.pixton@kirkland.com

*Attorneys for Defendants Polaris Industries Inc. and Polaris Sales Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

STATEMENT OF ALLEGED AND JUDICIALLY NOTICEABLE FACTS............................. 3

    A.    The Parties. ................................................................................................... 3

    B.    Plaintiffs' Vehicles Were Covered by Polaris' Limited Warranty. ...................... 5

    C.    Plaintiffs' Claims And Purported Damages............................................... 5

ARGUMENT ......................................................................................................................... 6

I.    THE MAJORITY OF PLAINTIFFS' CLAIMS MUST BE DISMISSED
    BECAUSE THEY DO NOT ALLEGE A MANIFEST DEFECT. .................................. 6

    A.    Minnesota Requires A Manifested Defect (Counts 31, 33-35)............................ 9

    B.    Alabama Requires A Manifested Defect (Counts 2, 4-6). ................................... 10

    C.    Georgia Requires A Manifested Defect (Counts 17, 19-21)................................ 12

    D.    North Carolina Requires A Manifested Defect (Counts 36, 38-40). .................... 12

    E.    Ohio Requires A Manifested Defect (Counts 41, 43-45). ................................... 13

    F.    Texas Requires A Manifested Defect (Counts 46, 48-50). ................................... 14

    G.    Wyoming Would Require A Manifested Defect (Counts 52-54). ........................ 16

II.    THE MAJORITY OF PLAINTIFFS' WARRANTY AND MAGNUSON-MOSS
    CLAIMS FAIL AS A MATTER OF LAW..................................................................... 16

    A.    Nine Of 11 Express Warranty Claims Are Barred By Polaris' Limited
        Warranty (Counts 3, 18, 23, 27, 32, 37, 42, 47, 51). ............................................ 16

    B.    Eight Implied Warranty Claims Are Barred By Polaris' Limited Warranty
        (Counts 4, 19, 28, 33, 38, 43, 48, 52)..................................................................... 19

    C.    Plaintiffs' UCC Warranty Claims Are Barred Because They Do Not
        Allege Pre-Suit Notice (Counts 3, 4, 14, 18, 19, 23, 27, 28, 32, 33, 37, 38,
        42, 47, 48, 51, 52). ................................................................................................... 21

    D.    Plaintiffs' Individual Magnuson-Moss Claims Must Be Dismissed
        Because Their State Warranty Claims Fail (Count 1). ......................................... 23

i

## TABLE OF CONTENTS (CONT'D)

**Page**

III.  THE UNJUST ENRICHMENT CLAIMS OF EACH PLAINTIFF FAIL...................... 24

    A.  State Law Bars Unjust Enrichment Claims Where Plaintiffs Have An
Adequate Remedy At Law Such As Express Warranty Claims (Counts 6,
11, 16, 21, 25, 30, 35, 40, 45, 50, 54). ................................................................. 24

    B.  Certain Unjust Enrichment Claims Fail Because Plaintiffs Did Not
Directly Confer A Benefit On Polaris (Counts 16, 30, 40, 45, 50)...................... 25

IV.  PLAINTIFFS' FRAUDULENT OMISSION AND CONSUMER FRAUD
CLAIMS FAIL AS A MATTER OF LAW....................................................... 27

    A.  Plaintiffs Fraudulent Omission And Consumer Fraud Claims Do Not
Satisfy Rule 9(b) (Counts 2, 5, 10, 13, 15, 17, 20, 22, 24, 26, 29, 31, 34,
36, 39, 41, 44, 46, 49, 53). .................................................................................. 27

    B.  The Economic Loss Doctrine Bars Fraud Claims Under Florida, Michigan,
North Carolina, And Texas Law (Counts 15, 29, 36, 39, 49). ............................. 29

    C.  Florida, Michigan, and Texas Do Not Impose A Duty To Disclose Under
The Facts Alleged By Plaintiffs (Counts 15, 29, 49)............................................ 33

CONCLUSION............................................................................................................... 35

## INTRODUCTION

Plaintiffs' Consolidated Class Action Complaint alleges claims on behalf of 11 plaintiffs in 11 states who seek to represent more than 300,000 Polaris vehicle owners nationwide.  (¶195.)[1]  The complaint alleges plaintiffs' vehicles "suffer from a design defect that creates a significant and unreasonable risk of the vehicles overheating and catching fire."  (¶¶2, 7 (alleging an "Engine Overheat/Fire Defect").)  With the exception of plaintiff Jose Luna's warranty claims, the complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety.

*First*, Minnesota, Alabama, Georgia, North Carolina, Ohio, Texas, and Wyoming do not recognize tort-based economic loss claims arising from an alleged defect unless that defect actually manifests—that is, the plaintiff's vehicle "overheat[s] and catch[es] fire"— regardless of whether pled as implied warranty, common law or consumer fraud, or unjust enrichment claims.  This is because the law requires a plaintiff to plead facts showing an actual injury, not just a risk of injury that may never occur.  Where an alleged defect has not manifested, and may not ever manifest, the plaintiff has no actual injury sufficient to support a claim.  Thus, with the exception of their express warranty claims (which fail for independent reasons explained below), the claims of plaintiffs who do not allege that their vehicles overheated and caught fire must be dismissed as a matter of law.  As the Eighth Circuit has held, "it is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested in the

---

[1]  Paragraph cites are to plaintiffs' Consolidated Class Action Complaint [Dkt. 35].

product they own." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (citing *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (affirming dismissal of consumer fraud claims)).

**Second,** independent of the manifest defect rule, all of plaintiffs' warranty claims—except for plaintiff Luna's—must be dismissed as a matter of law.[2]  That is because nine plaintiffs' express warranty and eight plaintiffs' implied warranty claims do not allege any problem or issue within the warranty period.  Additionally, several plaintiffs' warranty claims are barred because plaintiffs did not provide Polaris with pre-suit notice.  And plaintiffs' claims under the Magnuson-Moss Warranty Act necessarily fail with their implied warranty claims.

**Third**, in addition to being barred by the manifest defect rule, plaintiffs' unjust enrichment claims fail because state law precludes such claims where plaintiffs allege an adequate remedy at law—including breach of an express warranty—regardless of plaintiffs' success in obtaining remedies.  Also, Florida, Michigan, North Carolina, Ohio, and Texas require that a plaintiff ***directly*** confer a benefit on defendants.  Plaintiffs cannot make this showing where they bought their vehicles from third parties, not defendants.

**Fourth**, plaintiffs' fraudulent omission and consumer fraud claims fail for the

---

[2]  Polaris moves to dismiss all claims brought by all plaintiffs except for Luna's express and implied warranty claims, which are unique in that he alleges his vehicle caught fire within the warranty period (¶117) and that he provided Polaris with pre-suit notice (¶276).

independent reason that plaintiffs have not pled fraud with particularity as required by Rule 9(b). Finally, plaintiffs' fraudulent omission and consumer fraud claims in Florida, Michigan, North Carolina, and Texas are barred by the economic loss doctrine, and plaintiffs' fraudulent omission claims under Florida, Michigan, and Texas law fail because those states do not recognize a duty to disclose under the allegations here.

With the exception of plaintiff Luna's warranty claims, the complaint should be dismissed in its entirety. For the Court's convenience, Exhibit 1 to the Declaration of R. Allan Pixton summarizes each plaintiff's claims and why they should be dismissed.[3]

## STATEMENT OF ALLEGED AND JUDICIALLY NOTICEABLE FACTS

### A.    The Parties.

Defendants (collectively, "Polaris") design and manufacture, in part, off road vehicles sold to end users by independent dealers. (¶¶20-86.) Between 2013 and 2018, Polaris and the Consumer Product Safety Commission ("CPSC") announced a number of voluntary recalls covering several of the putative class vehicles, though the recalls addressed distinct issues and provided different repairs. (¶¶115-141.)

Eleven plaintiffs bring claims under the laws of their respective states. The plaintiffs, their vehicles, and whether the alleged Engine Overheat/Fire Defect is alleged to have manifested follow:

---

[3] Exhibit citations refer to exhibits to the Declaration of R. Allan Pixton.

3

| Name | State | Vehicle | Alleges Manifested Defect? |
|---|---|---|---|
| Bruner, James | AL | 2017 Ranger XP 900 | No |
| Luna, Jose | CA | 2018 Polaris RZR 4 XP Turbo | Yes |
| Halvorsrod, Clint | FL | 2017 Ranger Highlifter | Yes |
| Lenz, Robert | GA | 2017 RZR Highlifter | No |
| Zeeck, Michael | IL | 2017 RZR XP 1000 | No |
| Rogers, Chad | MI | 2015 RZR 900 | Yes |
| Berens, Richard | MN | 2017 General 4 1000 | No |
| Bailey, Steve | NC | 2017 Ranger 570 | No |
| Jacks, Michael | OH | 2015 Ranger XP 900 | No |
| Forrest, Bryan | TX | 2015 Ranger 570 Full Size | No |
| Beattie, Ed | WY | 2016 Ranger XP 900 | No |

Only three plaintiffs—Luna, Halvorsrod, and Rogers—allege the purported "Engine Overheat/Fire Defect" manifested in their vehicles.  (¶¶28, 35, 114.)  The remaining eight plaintiffs do not, nor do they allege any injuries, damages, or losses, other than alleged overpayment for and purported diminution in value of their vehicles.  (¶¶20-25, 39-44, 45-56, 57-62, 63-68, 69-74, 75-80, 81-86, 201-757.)

4

**B.      Plaintiffs' Vehicles Were Covered by Polaris' Limited Warranty.**

Each plaintiff alleges he received a written Polaris Limited Warranty with the purchase of his vehicle and asserts a claim for breach of that express warranty.  (¶¶231, 285, 351, 392, 441, 485, 538, 585, 636, 685, 723.)  Accordingly, the Court may consider the Limited Warranty on which each plaintiff bases his warranty claims, including documents sufficient to show when he purchased his vehicles and when his respective warranty coverage expired.  *See Hatch v. TIG Ins. Co.*, 301 F.3d 915, 916 n.2 (8th Cir. 2002) (documents are properly considered where complaint "references and relies upon such documents as the basis for [plaintiff's] claims"); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (When considering a motion to dismiss, the Court may consider "materials that are part of the public record…. as well as materials that are necessarily embraced by the pleadings.").  Excerpted copies of the Limited Warranty and registration history for plaintiffs' vehicles are collectively attached in Exhibit 2.

**C.      Plaintiffs' Claims And Purported Damages.**

Plaintiffs bring unjust enrichment, breach of implied and express warranty, fraudulent omission, and consumer fraud claims under state law.  Plaintiffs also bring a claim on behalf of a putative nationwide class under the Magnuson-Moss Warranty Act ("MMWA").  Plaintiffs do not seek damages for physical injury, property damage, or out-of-pocket losses for repairs.  (¶193.)  Instead, they allege their vehicles have "diminished" in value and they "would not have purchased the vehicle or would have paid significantly

less." (¶¶25, 31, 38, 44, 50, 56, 62, 68, 74, 80, 86, 216, 227, 290, 291, 305, 306, 347, 388, 437, 478, 534, 631, 681.)

## ARGUMENT

The purpose of Fed. R. Civ. P. 12(b)(6) is to eliminate actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To survive dismissal, plaintiffs must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Applying the applicable standards, the Court should dismiss all claims except plaintiff Luna's warranty claims.

## I.   THE MAJORITY OF PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY DO NOT ALLEGE A MANIFEST DEFECT.

Courts recognize the general legal principle that a plaintiff cannot establish actual injury where the claimed defect in his or her product has never manifested. Under the "manifest defect rule," "a plaintiff has not suffered a present injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005).

Indeed, in affirming dismissal of an analogous putative class action for damages arising from CPSC-recalled consumer products, the Eighth Circuit held that "[i]t is not

enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *O'Neil*, 574 F.3d at 503; *see also In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (rejecting claims that "most or all of the cameras in issue contained 'defective' parts, *i.e.*, parts that could have resulted in malfunctions," but had not manifested).

Numerous decisions have applied this principle to dismiss claims—whether under fraud, consumer fraud, implied warranty, or other theories—against vehicle manufacturers where a defect did not manifest in the plaintiff's vehicle, causing injury or damage. *E.g.*, *Briehl*, 172 F.3d at 628 ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies. Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (rejecting "theory that selling products with undisclosed attributes, and thus worth less than represented," stated a claim in the absence of a manifest defect); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing fraud, negligent misrepresentation, and breach of warranty claims where defect in child seat did not manifest in plaintiff's vehicle); *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *3-4 (S.D.N.Y. May 22, 1996) (plaintiff could not recover for defective braking system where defect had not manifested); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.

Supp. 595, 602 (S.D.N.Y. 1982) (owners of tires that performed satisfactorily had not suffered damage to support a claim, even though tires of others had failed).

Moreover, plaintiffs cannot circumvent the manifest defect requirement by alleging they have been injured by overpaying for their vehicles when purchased or that their vehicles have diminished in value. In *O'Neil*, for example, the plaintiffs insisted that "they [had] not received the benefit of the bargain: they paid for a drop-side [baby] crib and now they do not use the crib because the drop-side is not safe," and sought to recover the difference in value between a crib with a functional drop-side and a crib without one. 574 F.3d at 504. The Eighth Circuit rejected this argument and affirmed dismissal of plaintiffs' claims, stating because plaintiffs' "crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain." *Id*; *see also In re Bridgestone/Firestone*, 288 F.3d at 1017 ("If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation.").

Likewise, in *Carlson v. General Motors Corp.*, the Fourth Circuit rejected plaintiffs' claim that they were injured by the diminished resale value of their vehicles equipped with allegedly defective diesel engines or by the vehicles' allegedly "poor reputation." 883 F.2d 287, 289, 297-98 (4th Cir. 1989) ("[I]mplied warranty of merchantability clearly does not encompass consumer expectations that a product will hold its value; and it is for this reason that several courts have rejected claims similar to those pressed here."). *Accord Briehl*,

8

172 F.3d at 629 (allegations that plaintiffs "suffered a loss in resale value" of their vehicles "as a result of the defect is insufficient as a matter of law").[4]

Here, plaintiffs from Minnesota, Alabama, Georgia, North Carolina, Ohio, Texas, and Wyoming do not allege that the claimed defect manifested in their vehicles. Those plaintiffs do not have cognizable claims, even if they allege diminished value or that they would have paid less for (or not purchased) their vehicles had they known of the purported defects. Accordingly, under the manifest defect rule, all of their claims other than breach of express warranty should be dismissed as a matter of law.

### A.    Minnesota Requires A Manifested Defect (Counts 31, 33-35).

As discussed above, the Eighth Circuit in the analogous *O'Neil* case held that "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies." 574 F.3d at 504 (internal citations omitted). Moreover, *O'Neil* expressly rejected plaintiffs' argument "that they have not received the benefit of the bargain: they paid for a drop-side crib and now they do not use the crib because the drop-side is not safe." *Id.* "[B]ecause the [plaintiffs'] crib has not exhibited the alleged

---

[4]  The manifest defect rule is related to the requirement that a plaintiff must suffer actual injury to establish Article III standing. In *Wallace v. ConAgra Foods, Inc*., plaintiffs alleged they overpaid for purportedly kosher hot dogs that may have contained improperly certified meat. 747 F.3d 1025, 1027-28 (8th Cir. 2014). In holding that plaintiffs did not have a sufficiently "particularized, actual injury in fact" to establish Article III standing, the Eighth Circuit quoted *O'Neil*, explaining that "[i]n the context of defective products, 'it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.'" *Id.* at 1030 (internal citations omitted).

defect, they have necessarily received the benefit of their bargain." *Id.* Minnesota state court decisions are in accord. *E.g.*, *Carey v. Select Comfort Corp.*, 2006 WL 871619, at *2-3 (Minn. Dist. Ct. Jan. 30, 2006) (dismissing consumer fraud, common law fraud, and implied warranty claims because "diminished value premised on the possibility of future product failure is insufficient to support a claim for relief").

In sum, all claims of Minnesota plaintiff Berens (except for express warranty) should be dismissed because he does not allege a manifested defect or any other actual injury compensable under the law.

### B.    Alabama Requires A Manifested Defect (Counts 2, 4-6).

The Alabama Supreme Court has repeatedly held that a manifested injury is required to recover on a claim. *Ford Motor Co. v. Rice* addressed claims similar to those presented here: plaintiffs brought fraud claims alleging their vehicles were defectively designed and had a propensity to roll over, that the manufacturer was aware of the defect but concealed it, and that their vehicles had diminished in value. 726 So. 2d 626, 627 (Ala. 1998). The court held that without a manifested defect, "the plaintiffs' claims of injury are insufficient to sustain their action alleging fraudulent suppression." *Id.* at 628-29. "[I]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own" and "'[w]here … a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies.'" *Id.* at 628-29 (quoting *Weaver*, 172 F.R.D. at 99-100) (internal modifications omitted).

10

Decisions before and after *Rice* have emphasized the need for a manifested defect to state a claim under Alabama law.  In *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 406-07 (Ala. 1996), plaintiff sued for economic losses and the replacement cost of an artificial heart valve that had allegedly caused the deaths of approximately 200 people.  *Farsian* rejected these claims, holding that "Alabama courts have never allowed a recovery based on a product that, like Farsian's valve, is and has been working properly."  *Id.* at 407. "Farsian's concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law."  *Id.*  In *Hinton ex rel. Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001), plaintiff was exposed to a toxic substance and sought "to recover the costs of monitoring his health to detect whether he develops an illness or an injury in the future."  *Hinton* held that despite these economic costs, plaintiff had "not alleged a cause of action under our long-standing tort law."  *Id; see also Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 716 (Ala. 2002) ("Alabama has long required a manifest, present injury before a plaintiff may recover in tort.").

The rule announced in *Rice* extends to all claims governed by Alabama law, including the Alabama Deceptive Trade Practices Act ("ADTPA") and unjust enrichment claims.  726 So. 2d at 628-29 (without a manifested defect there is "no legally recognizable claim," "no cause of action lies," and such "claims … are not viable"); *see also Farsian*, 682 So. 2d at 407 (the possibility of a "later malfunction is not an injury recognized by Alabama law").  The relief available to a private plaintiff under the ADTPA is "actual damages."  Ala. Code § 8-19-10(a).  *Rice* held that an unmanifested defect was not "actual

11

injury," 726 So. 2d at 627, despite allegations of economic loss, and thus that same holding bars Alabama plaintiff Bruner's ADTPA, fraud, and unjust enrichment claims.

Accordingly, all claims of Alabama plaintiff Bruner (except for express warranty) should be dismissed as he does not allege a manifested defect.

### C.    Georgia Requires A Manifested Defect (Counts 17, 19-21).

For claims brought under the Fair Business Practices Act (Ga. Stat. Ann. §§ 10-1-390, *et seq.*, "FBPA"), Georgia requires "actual damages" or otherwise limits recoveries for consumer fraud claims. *See Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 139 (Ga. App. 2001). "[E]ven an award for general damages under the FBPA is limited to those damages that can be measured by 'actual injury suffered.'" *Tiismann v. Linda Martin Homes Corp.*, 610 S.E.2d 68, 70 (Ga. 2005). Where a plaintiff's claim involves a warranty, plaintiff's pleading obligations are even higher: their claims are dismissed when they "have made no claim under the warranty (and have been denied), made no repair other than that made by [defendant] at no charge, nor otherwise shown an 'actual injury suffered.'" *Edel v. Southtowne Motors of Newnan II, Inc.*, 789 S.E.2d 224, 228 (Ga. App. 2016). Georgia plaintiff Lenz does not allege a manifested defect. Nor does he plead that Polaris denied a warranty claim or that he made additional repairs beyond those provided by Polaris or its dealers. Thus, his claims (except for express warranty) should be dismissed.

### D.    North Carolina Requires A Manifested Defect (Counts 36, 38-40).

North Carolina does not allow claims, including under its Unfair & Deceptive Trade Practices Act ("UDTPA"), based on reduced value resulting from the purchase of a

purportedly defective product in the absence of a manifested defect. *See Coker v. DaimlerChrysler Corp.*, 617 S.E.2d 306, 310-14 (N.C. App. 2005), *aff'd*, 627 S.E.2d 461 (N.C. 2006) (dismissing UDPTA and common law fraud claims in the absence of manifest defect); *see also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 617-18, 630 (M.D.N.C. 2006) (claims based on "substantially diminished value" of "inherently defective" vehicles could not constitute injury: "prospective class members whose ball joints have not manifested any defects and who merely allege that they have suffered diminished value or loss of resale value of their Durangos, will not sufficiently allege actual injury"); *Maxwell v. Remington Arms Co., LLC*, 2014 WL 5808795, at *5 (M.D.N.C. Nov. 7, 2014) ("[U]nder North Carolina law prospective class members whose products have not manifested any defects and who merely allege that they have suffered diminished resale value will not sufficiently allege actual injury.").

As such, all claims of North Carolina plaintiff Bailey (except for express warranty) should be dismissed as he does not allege a manifested defect.

### E.   Ohio Requires A Manifested Defect (Counts 41, 43-45).

The Ohio Supreme Court has explained that in class actions the Ohio Consumer Sales Practices Act ("OCSPA") is limited to "actual damages," which requires a manifested defect. *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224, 1231 (Ohio 2015). *Felix* holds that "the OCSPA limited the damages available in class actions to actual damages" and "[p]roof of actual damages is required before a court may properly certify a class action." *Id.* at 1231. *Felix* explains that this requirement is "consistent with the majority of

13

decisions by other states' appellate courts, which also hold that plaintiffs who bring private causes of action under their states' consumer-protection statutes are required to plead and prove actual damages or injury." *Id.* at 1232 (citing cases).

While *Felix* addressed the OCSPA, Ohio courts have broadly applied the manifest defect rule to torts, such as fraud, and breach of implied warranty. *See, e.g.*, *Gentek Bldg. Prods.*, 2005 WL 6778678, at *11 (finding no "injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property."); *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317 (N.D. Ohio June 13, 2007) (same).

Thus, all claims of Ohio plaintiff Jacks (except for express warranty) should be dismissed because he does not allege a manifested defect.

### F. Texas Requires A Manifested Defect (Counts 46, 48-50).

Texas rejects claims where there is no manifested defect, holding that such plaintiffs lack standing. In *Everett v. TK-Taito, LLC*, plaintiffs claimed that seat belt buckles in various vehicle models were defective and sought benefit of the bargain and cost of replacement damages, even though their own buckles had not malfunctioned. 178 S.W.3d 844, 844-850 (Tex. App. 2005). *Everett* rejected plaintiffs' claims for violation of the Texas Deceptive Trade Practices Act ("TDTPA"), fraudulent concealment, breach of implied warranty, and unjust enrichment. Regarding plaintiffs' consumer fraud claim, the court held that "potential loss-of-benefit-of-the-bargain injuries and potential cost-of-repair or replacement injuries from a defect that has not manifested simply become too remote in

14

time to constitute an 'injury' for statutory standing under the [T]DTPA." *Id.* at 858.

Plaintiffs' fraudulent concealment claim likewise failed because "the unmanifested product

defect [plaintiffs] have pleaded is not redressable." *Id.* at 857 n.11. "To cause redressable

injuries in the breach of the implied warranty of merchantability context, a 'defect' must

either have manifested during the product's normal use or such manifestation must be

inevitable when the defective feature of the product is used." *Id.* at 855. An unjust

enrichment claim also fails without a manifested defect. *Id*. at 859-60.

    Courts have repeatedly held that Texas law does not allow recovery for

unmanifested defects. *See*, *e.g.*, *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 83 (Tex.

App. 2005) (denying class certification of warranty and TDTPA claims based on

differences in alleged brake defect manifestation); *Polaris Indus. Inc. v. McDonald*, 119

S.W.3d 331, 340 (Tex. App. 2003) (dismissing implied warranty and MMWA claims based

on allegedly defective watercraft where plaintiff "sustained no injury due to its alleged

defects"); *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 303-07 (Tex. 2008) (where

no defect has manifested and the possibility of injury is remote, plaintiff has failed to allege

a sufficient injury for standing); *In re Gen. Motors LLC.*, 257 F. Supp. 3d 372, 452; n.28

(S.D.N.Y. 2017) (dismissing Texas consumer fraud and implied warranty claims).[5]

---

[5] *See also, e.g., Rosa v. Am. Water Heater Co.*, 2133 F. Supp. 3d 1025, 1053 (S.D. Tex. 2016) (dismissing warranty claims based on manifest defect rule); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455-56 (S.D. Tex. 1996) (dismissing implied warranty, fraud, misrepresentation, and consumer fraud claims where no manifest defect alleged).

Accordingly, all claims of Texas plaintiff Forrest (except for express warranty) should be dismissed as he does not allege a manifested defect.

### G.    Wyoming Would Require A Manifested Defect (Counts 52-54).

Wyoming does not appear to have directly addressed whether a manifested defect is required to state common law tort and warranty claims, though its consumer fraud statute does limit a consumer to bringing "an action under this act for the damages he has actually suffered."  Wyo. Stat. Ann. § 40-12-108; *see also Broderick v. Dairyland Ins. Co.*, 270 P.3d 684, 692 (Wyo. 2012) (explaining that Wyoming law provides "remedies in limited circumstances").  Given that the manifest defect requirement is the majority rule, this Court should predict that Wyoming law would prohibit plaintiffs from recovering on claims without a manifested defect.  *See e.g., In re Gen. Motors LLC.*, 257 F. Supp. at 423 n.98 ("[T]he 'majority view is that there is no legally cognizable injury in a product defect case, regardless of whether the claim is for fraud, violation of consumer protection statutes, breach of warranty, or any other theory, unless the alleged defect has manifested itself in the product used by the claimant.").

Accordingly, all claims of Wyoming plaintiff Beattie (except for express warranty) should be dismissed because he does not allege a manifested defect.

## II.   THE MAJORITY OF PLAINTIFFS' WARRANTY AND MAGNUSON-MOSS CLAIMS FAIL AS A MATTER OF LAW.

### A.    Nine Of 11 Express Warranty Claims Are Barred By Polaris' Limited Warranty (Counts 3, 18, 23, 27, 32, 37, 42, 47, 51).

All plaintiffs assert express warranty claims.  Nine plaintiffs' claims should be

dismissed because plaintiffs do not allege a problem that occurred during the warranty period, and all but one should be dismissed because plaintiffs do not allege they gave Polaris the opportunity to address the purported warranty issue.  Plaintiffs' express warranty claims are based on the Limited Warranty, which plaintiffs allege is "substantially identical for all models" and provides that for a period of six months, Polaris will cover the cost of repair or replacement for all components of the covered vehicle."  (*Eg.*, ¶231.)

"The general rule is that an express warranty has no effect after the applicable time period has elapsed."  *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011); *see also Abraham v. Volkswagen of Am., Inc.,* 795 F.2d 238, 241 (2d Cir. 1986) ("the express warranties in this case do not cover automobile defects manifesting themselves after expiration of the time/mileage limits of the relevant warranties").  This general rule is enforced by courts across the country, holding that plaintiffs can maintain claims for breach of express warranty only if they can show that a breach occurred within the period specified by the warranty itself.[6]

Only two plaintiffs—Luna and Halvorsrod—allege any breach or defect manifestation *during* the limited warranty period.  (¶¶27-28, 33-35.)  The remaining nine

---

[6] *See, e.g.*, *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 879 (E.D. Mich. 2009); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013); *Ferro v. Volvo Penta of the Am., LLC,* 2017 WL 3710071, at *2 (E.D.N.C. Aug. 28, 2017); *Sonner v. Mullinax Ford North Canton, Inc*., 2000 WL 700313, *2 (Ohio App. May 22, 2000); *Mountain Fuel Supply Co. v. Cent. Eng'g & Equip. Co.*, 611 P.2d 863, 872 (Wyo. 1980); *Tokar v. Crestwood Imports, Inc*., 532 N.E. 2d 382, 388-389 (Ill. App. 1988).

plaintiffs do not allege any problems with their vehicles during the Limited Warranty period. Moreover, plaintiffs cannot avoid dismissal by alleging that Polaris' Limited Warranty is invalid because it purportedly fails in its essential purpose. Except for Wyoming and Illinois, plaintiffs in these jurisdictions can assert that a warranty fails in its essential purpose *only* if they give the manufacturer or seller an opportunity—often multiple opportunities—to correct the purported issue.[7] Plaintiffs allege that Polaris issued numerous recall campaigns for the RZR, Ranger, and General vehicles (*e.g.,* ¶¶117, 124, 129, 133-135, 139-141), but they do not allege that they gave Polaris or Polaris-authorized

---

[7] *See* (**Minn.**) *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1189 (D. Minn. 2001) (warranty did not fail where plaintiff "never made a claim on the warranty"); (**Ala.**) *Ag-Chem Equip. Co. v. Limestone Farmers Co-Op., Inc.*, 567 So. 2d 250, 252 (Ala. 1990) (warranty did not fail in essential purpose where defendant was not given "the opportunity to rebuild the engine in accordance with the warranty"); (**Fla.**) *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309,1319 n.11 (S.D. Fla. 2009) ("'[E]ssential purposes' exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use."); (**Ga.**) *Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *8 (N.D. Ga. Mar. 23, 2016) ("Georgia courts have required a showing of multiple attempts to repair a defect in order to sustain a breach of warranty."); (**Mich.**) *Zanger v. Gulf Stream Coach, Inc.*, 2005 WL 3163392, at *5 (E.D. Mich. Nov. 28, 2005) (assessing reasonableness of repair based on "numerous, individual repairs"); *TIBCO Software, Inc. v. Gordon Food Serv., Inc.*, 2003 WL 21683850, at *6 (W.D. Mich. July 3, 2003) (warranty did not fail in essential purpose where plaintiff "did not make a warranty claim within the ninety-day period"); (**N.C.**) *Farrar & Farrar Farms v. Miller-St.Nazianz, Inc.*, 477 F. App'x 981, 988 (4th Cir. 2012) (warranty did not fail where no evidence defendant failed to correct issue on second repair attempt); (**Ohio**) *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 56, (1989) ("It would be unreasonable as a matter of law to conclude that the remedy failed of its essential purpose" where no evidence defendant was unable or unwilling to replace or repair the problem.); (**Tex.**) *Ross Neely Sys., Inc. v. Navistar, Inc.*, 2015 WL 12939110, at *2 (N.D. Tex. May 28, 2015) (plaintiff must "allege that [defendant] willfully failed or refused to make repairs"; it is not enough to allege defendant "could not 'fix' the underlying design defect").

retailers an opportunity to perform the recall and/or other repairs, and thus cannot show that the warranties failed in their essential purpose.

The express warranty claims of plaintiffs Berens, Bruner, Lenz, Zeeck, Rogers, Bailey, Jacks, Forrest, and Beattie should be dismissed.

### B. Eight Implied Warranty Claims Are Barred By Polaris' Limited Warranty (Counts 4, 19, 28, 33, 38, 43, 48, 52).[8]

Nine plaintiffs assert implied warranty claims, but all claims except that of plaintiff Luna's claim must be dismissed in accordance with the terms of their Polaris Limited Warranty. Each state at issue permits a seller to modify an implied warranty of merchantability so long as the written modification is conspicuous. *See, e.g.,* Minn. Stat. Ann. § 336.2-316(2) (same); Ala. Code § 7-2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."); Ga. Code Ann. § 11-2-316(2) (same); Mich. Comp. Laws § 440.2316(2) (same); N.C. Gen. Stat. Ann. § 25-2-316(2) (same); Ohio Rev. Code Ann. § 1302.29(B) (same); Tex. Bus. & Comm. Code Ann. § 2.316(b) (same); Wyo. Stat. Ann. § 34.1-2-316(b) (same). The MMWA likewise permits a seller to limit the duration of an implied warranty so long as it is for a reasonable period of time and "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b).

---

[8]  Plaintiffs' implied warranty claims also fail because they do not allege a manifested defect, as described in Section I, *supra.*

19

Polaris' Limited Warranty, which is included in the owner's manual issued to purchasers of new vehicles, explicitly limits any implied warranty of merchantability to the duration of the six-month warranty period, and does so in a conspicuous manner using all-capitalized words:

> THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE IS EXCLUDED FROM THIS LIMITED WARRANTY. ALL OTHER IMPLIED WARRANTIES (INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY) ARE LIMITED IN DURATION TO THE ABOVE SIX MONTH WARRANTY PERIOD.

(Ex. 2 at 5, 9, 14, 18, 22, 27, 31, 35, 39, 43, 47.)  Plaintiffs do not allege that Polaris' warranty is not conspicuously stated in writing in their owner's manuals.  Two conclusions follow:

*First*, Polaris' limitation on the implied warranty of merchantability is legally effective and enforceable under state law and the MMWA—it is written, conspicuous, and of a reasonable duration.  *See, e.g. Wedderburn Corp. v. Jetcraft Corp.*, 2015 WL 6951549, at *9 (N.C. Super. Nov. 6, 2015) (dismissing implied warranty claims where written warranty limited it in conspicuous language); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *4-5 (N.D. Cal. Mar. 12, 2014) (dismissing implied warranty claims brought under, *inter alia*, Ohio and Texas law where vehicle sold with written limited warranty); *Hamilton v. Cross Country Chrysler Plymouth, Inc.*, 1979 WL 208771, at *4-5 (Ohio App. Nov. 14, 1979) (affirming dismissal of breach of implied warranty claims based on express disclaimer); *M.J. Bradley Co. v. Gen. Polymers Corp.*, 1994 WL 594156, at *2-3 (E.D. Pa.

Oct. 28, 1994) (finding limitation on implied warranty of merchantability printed in all capital letters conspicuous as a matter of Ohio law).

*Second*, because Polaris' Limited Warranty is effective, the plaintiffs who do not allege a problem during the implied warranty period fail to state a claim. By the plain terms of Polaris' Limited Warranty, all applicable implied warranties, including the implied warranty of merchantability, "are limited in duration to the above six month warranty period." (Ex. 2 at 5, 9, 14, 18, 22, 27, 31, 35, 39, 43, 47.) Because only Luna and Halvorsrod allege to have had, or to have reported to a dealership, any issues with their vehicles in that timeframe, the implied warranty claims of the remaining plaintiffs must be dismissed. *See, e.g., Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434 (11th Cir. 2009) (affirming dismissal of implied warranty claim where "plaintiffs failed to allege that a defect manifested itself or a breach occurred within" the applicable warranty period).

### C. Plaintiffs' UCC Warranty Claims Are Barred Because They Do Not Allege Pre-Suit Notice (Counts 3, 4, 14, 18, 19, 23, 27, 28, 32, 33, 37, 38, 42, 47, 48, 51, 52).

Plaintiffs assert 17 express and implied warranty claims under the UCC in nine states.[9] Every UCC claim fails as a matter of law because plaintiffs do not allege that they provided Polaris with any required pre-suit notice of an alleged breach of warranty. *See* Minn. Stat. Ann. § 336.2-607(3)(a) ("Where a tender has been accepted . . . the buyer must

---

[9] Plaintiffs bring three warranty claims under Ohio and California law that are not derived from the UCC. (*See* ¶¶279-307 (California Song-Beverly Consumer Warranty Act claims), ¶¶645-51 (Ohio implied warranty claim).) Additionally, plaintiffs do not allege implied warranty claims under Florida or Illinois law.

21

within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;"); Ala. Code § 7-2-607(3)(a);[10] Fla. Stat. Ann. § 672.607(3)(a); Ga. Code Ann. § 11-2-607(3)(a); 810 ILCS § 5/2-607(3)(a); Mich. Comp. Laws § 440.2607(3)(a); N.C. Gen. Stat. Ann. § 25-2-607(3)(a); Ohio Rev. Code Ann. § 1302.65(C)(1); Tex. Bus. & Comm. Code Ann. § 2.607(c)(1); Wyo. Stat. Ann. § 34.1-2-607(c)(i).

Rather than allege facts demonstrating they provided notice to Polaris of an alleged breach, plaintiffs claim Polaris was "provided notice" of "issues and defects" "through numerous complaints [by others] filed against it, as well as internal knowledge derived from testing and internal expert analysis."   (*See, e.g.*, ¶¶234, 245 (Alabama warranty claims).)   These "general notice" allegations based on actions of third parties and Polaris' supposed internal knowledge is insufficient as a matter of law to satisfy the UCC's pre-suit notice requirement.[11]   Accordingly, these plaintiffs' warranty claims should be dismissed.

---

[10]   Alabama plaintiff Bruner's failure to provide Polaris pre-suit notice also precludes his consumer fraud claim.  *See* Ala. Code § 8-19-10; ¶¶217-227; *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399–400 (N.D. Ala. 1997) ("[F]ailure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to [plaintiffs'] claim.").

[11]   *See, e.g.*, (**Minn.**) *Drobnak v. Andersen Corp.*, 561 F.3d 778, 785-86 (8th Cir. 2009) (affirming dismissal of claims based "solely on [other consumers'] notice and lawsuits"); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 827 (D. Minn. 2010) (dismissing claims where plaintiffs failed to allege "having made any contact with Ford or its agent before filing this suit"); (**Ala.**) *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) ("Notice must, therefore, precede the filing of the complaint."); *Smith v. Apple, Inc.*, 2009 WL 3958096, at *1-2 (N.D. Ala. Nov. 4, 2009) (same); (**Fla.**) *Sclar v. OsteoMed, L.P.*, 2018 WL 559137, at *2 (S.D. Fla. Jan. 24, 2018) (same); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (same); (**Ga.**) *Garcia v. Chrysler Grp. LLC*,

**D.      Plaintiffs' Individual Magnuson-Moss Claims Must Be Dismissed Because Their State Warranty Claims Fail (Count 1).**

The Magnuson-Moss Warranty Act creates a federal cause of action for violations of state warranty law and thus requires a viable state law warranty claim to survive a motion to dismiss.  *See, e.g.*, *Sipe v. Workhorse Custom Chassi*s, LLC, 572 F.3d 525, 530 (8th Cir. 2009) ("The MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law."); *Carey v. Chaparral Boats, Inc.*, 514 F. Supp. 2d 1152, 1154 (D. Minn. 2007).  For the reasons stated above, plaintiffs' various express and implied warranty claims fail as a matter of law.  As a result, their individual MMWA claims fail as well.[12]  *See, e.g., Browe v. Evenflo Co.*, 2015 WL 3915868, at *5

---

127 F. Supp. 3d 212, 225-26 (S.D.N.Y. 2015) (dismissing claims where plaintiffs alleged "Chrysler was put on notice of TIPM-related defects as a result of consumer complaints submitted to it"); *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *15 (D. N.J. Jan. 24, 2014) (dismissing claims where plaintiff "failed to allege pre-suit notice and an opportunity to repair."); (**Ill.**) *Connick v. Suzuki Motor Co.,* 675 N.E.2d 584, 590 (Ill. 1996) ("[T]he notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer."); (**Mich.**); *Johnston v. PhD Fitness, LLC,* 2018 WL 646683, at *3-4 (E.D. Mich. Jan. 31, 2018) (dismissing claims due to lack of pre-suit notice); (**N.C.**) *Sani-Pure Food Labs., LLC v. bioMerieux, Inc.*, 2014 WL 6386803, at *6 (D.N.J. Nov. 13, 2014) (same); (**Ohio**) *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) (same); (**Tex.**) *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970-71 (S.D. Tex. 2016) (same); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (rejecting "generalized knowledge of concerns"); (**Wyo.**) *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P.2d 589, 591 (Wyo. 1984) ("[N]otice is required to be furnished by one who asserts a right of relief against the seller." (internal citation omitted)).

[12]    Plaintiffs' nationwide MMWA class claim also fails because they lack standing to pursue nationwide relief.  A nationwide claim requires plaintiffs to allege that Polaris violated the warranty laws of every jurisdiction, yet the complaint only identified 11 plaintiffs from 11 states.  With no plaintiffs from the remaining 40 jurisdictions, plaintiffs cannot possibly sustain a nationwide MMWA claim.  *See, e.g., Hindsman v. Gen. Motors*

(D. Minn. June 25, 2015) ("Without a warranty claim arising under state law for foundation, Browe's MMWA claim fails."); *Chin v. Gen. Mills, Inc.*, 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (same).[13]

## III.   THE UNJUST ENRICHMENT CLAIMS OF EACH PLAINTIFF FAIL.

### A.   State Law Bars Unjust Enrichment Claims Where Plaintiffs Have An Adequate Remedy At Law Such As Express Warranty Claims (Counts 6, 11, 16, 21, 25, 30, 35, 40, 45, 50, 54).

Unjust enrichment, an equitable claim, is not viable where there is an adequate remedy at law. This is because unjust enrichment is a quasi-contract remedy that implies a contract where one does not actually exist. *E.g., White v. Microsoft Corp.,* 454 F. Supp. 2d 1118, 1132 & n.23 (S.D. Ala. 2006). Each of the 11 states precludes unjust enrichment claims where, as here, the plaintiff has an adequate remedy at law, including a breach of express warranty claim.[14]

_____

*LLC*, 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018) (dismissing nationwide claim because plaintiffs lacked standing to represent consumers in other states); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (same) (collecting cases).

[13] Additionally, Ohio plaintiff Jacks cannot maintain a claim under the MMWA. *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 882 (N.D. Cal. 2018) (dismissing MMWA claim premised on Ohio implied warranty in tort claim).

[14]   *See, e.g.,* (**Minn.**) *Zupancich v. U.S. Steel Corp.*, 2009 WL 1474772, at *3 (D. Minn. May 27, 2009) (dismissing claims due to "the existence of an express contract between the parties"); (**Ala.**) *In re Gen. Motors LLC* 257 F. Supp. 3d. at 409 (dismissing claim because plaintiff "has adequate remedies at law insofar as she purchased her car under warranty, and brings claims for the same damages under the ADPTA and for common law fraudulent concealment") (**Cal.**) *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. App. 2010) ("As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract."); (**Fla.**) *In re Gen. Motors LLC*, 2016 WL 3920353, at *28 (dismissing claim because of express warranty); (**Ga.**) *Marvin Hewatt Enterprises,*

24

Each of the plaintiffs concedes adequate remedies at law, as shown by their breach of warranty, MMWA, implied warranty, fraudulent omission, and consumer protection claims for money damages.  In fact, all plaintiffs allege that Polaris provided an express Limited Warranty covering their vehicles and/or that the Limited Warranty "formed the basis of the bargain that was reached when Plaintiff…purchased or leased [his] Class Vehicle."  (¶¶232, 285, 352, 393, 442, 486, 539, 586, 637, 686, and 724.)  The existence of these express warranties bars unjust enrichment claims for all plaintiffs.  Accordingly, plaintiffs cannot assert a claim based on the absence of a contract.

**B.    Certain Unjust Enrichment Claims Fail Because Plaintiffs Did Not Directly Confer A Benefit On Polaris (Counts 16, 30, 40, 45, 50).**

Plaintiffs did not buy their vehicles directly from Polaris, but instead purchased them from independent dealerships.  (¶¶21, 27, 33, 40, 46, 52, 58, 64, 70, 76, 82.)   This

---

*Inc. v. Butler Capital Corp.*, 761 S.E.2d 857, 863 (Ga. App. 2014) ("Where there is an express contract, there can be  no recovery based upon an unjust enrichment theory."); (**Ill.**) *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); (**Mich.**) *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 506 (6th Cir. 1995) (holding that "the existence of an implied-in-fact contract, which provides a legal remedy, will bar a claim of unjust enrichment"); (**N.C.**) *U.S. Bank Nat'l Ass'n v. Sofield*, 2017 WL 2569740, at *4 (W.D.N.C. June 13, 2017) (dismissing claim where "there is a contract that governs the relationship between parties"); (**Ohio**) *Eberhard v. Chicago Title Ins. Co.*, 2012 WL 13029534, at *16 (N.D. Ohio Mar. 31, 2012) (dismissing claim because "an express contract covering the same subject matter exists") (internal quotations omitted); (**Tex.**) *In re Gen. Motors LLC*, 257 F. Supp. 3d at 455 (dismissing claims where plaintiffs received vehicle warranty); (**Wyo.**) *Big-D Constr. Corp. v. Simplot Phosphates, LLC,* 2017 WL 3449608, at *3 (D. Wyo. Feb. 16, 2017) ("[U]njust enrichment remedy is not available where there is an express contract governing the relationship between the parties.").

provides yet another reason to dismiss the unjust enrichment claims of the Florida, Michigan, North Carolina, Ohio, and Texas plaintiffs.  Each of these states requires that the plaintiff **_directly_** confer a benefit on the defendant to state an unjust enrichment claim.[15]

Polaris is a remote manufacturer and plaintiffs do not allege they purchased from or made any payment directly to Polaris; instead, they paid independent dealers.[16]  Thus, the unjust enrichment claims of the plaintiffs from Florida, Georgia, Michigan, North Carolina, Ohio, and Texas should be dismissed.

---

[15] *E.g.*, (**Fla.**) *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. App. 2009) (affirming dismissal because "Plaintiff cannot allege nor establish that it conferred a direct benefit upon [defendant]"); (**Mich.**) *Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, at *12-13 (E.D. Mich. June 3, 2016) (affirming dismissal of unjust enrichment claim because plaintiffs "have not alleged that they directly conferred a benefit on Defendant" in a case involving "consumer plaintiffs and a remote manufacturer"); *In re Gen. Motors LLC*, 257 F. Supp. 3d. at 427 (dismissing claims of Michigan plaintiffs who purchased through dealership); (**N.C.**) *Baker Const. Co., Inc. v. City of Burlington*, 683 S.E.2d 790, *6 (N.C. App. 2009) ("[T]his Court has limited the scope of a claim of unjust enrichment such that the benefit conferred must be conferred directly from plaintiff to defendant, not through a third party."); (**Ohio**) *In re Whirlpool Corp.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) (manufacturer had not been unjustly enriched under Ohio law because plaintiff purchased product from authorized retailer); (**Tex.**) *In re Ford Motor Co. E-350 Van Prod. Liab. Litig.* 2011 WL 601279, at *10 (D.N.J. Feb. 16, 2011) (dismissing claim under Texas law where plaintiff purchased at dealership).

[16] That the relationship between a manufacturer and a consumer is indirect does not affect the validity of an express warranty, and an unjust enrichment claim can be defeated both because the plaintiff did not confer a direct benefit on Polaris *and* because the plaintiff received Polaris' Limited Warranty.  *See, e.g., In re Gen. Motors LLC*, 257 F. Supp. 3d. at 426-28 (dismissing Michigan plaintiffs' unjust enrichment claims because plaintiffs received express warranties and did not confer a direct benefit on defendant manufacturer).

## IV.   PLAINTIFFS' FRAUDULENT OMISSION AND CONSUMER FRAUD CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiffs Fraudulent Omission And Consumer Fraud Claims Do Not Satisfy Rule 9(b) (Counts 2, 5, 10, 13, 15, 17, 20, 22, 24, 26, 29, 31, 34, 36, 39, 41, 44, 46, 49, 53).

Plaintiffs' fraudulent omission and consumer fraud claims fail to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and should be dismissed.  Rule 9(b) requires plaintiffs to plead "all averments of fraud or mistake" "with particularity," setting forth the "who, what, when, where, and how" of the allegedly fraudulent conduct. *Parnes v. Gateway 2000*, 122 F.3d 539, 549-50 (8th Cir. 1997).  "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Com. Prop. Invs. Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995).

Rule 9(b)'s requirements apply to plaintiffs' fraudulent omission and consumer fraud claims.  Whenever "the gravamen of the complaint is fraud," the heightened pleading requirements apply, even if the "relative breadth of the consumer protection statutes" at issue extends beyond common law fraud or plaintiffs allege fraudulent omission.  *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130 (D. Minn. 2016) (same).[17]

---

[17]  *See* (**Minn.**) *Tuttle*, 118 F. Supp. 2d at 963; (**Ala.**) *Holmes v. Behr Process Corp.,* 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015); (**Cal.**) *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009); (**Fla.**) *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *5 (S.D. Fla. Sep. 23, 2011); (**Ga.**) *Edwards-Astin v. Medtronic Minimed, Inc.*, 2008 WL 11319723, at *4 (N.D. Ga. Aug. 4, 2008); (**Ill.**) *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 736-37 (7th Cir. 2014); (**Mich.**) *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 641, 666 (E.D. Mich. 2011); (**N.C.**) *TopShelf Mgmt. Inc. v.*

27

Plaintiffs' fraudulent omission and consumer fraud claims fail to satisfy Rule 9(b)'s stringent standard. Plaintiffs have made "nothing more than sweeping conclusory allegations" to support these claims. *Tuttle*, 118 F. Supp. 2d at 964. Plaintiffs fail to identify, for example, the precise "time, place and contents" of the alleged false or undisclosed information, and do not specify the "person making the representation and what was obtained or given up thereby." *Parnes*, 122 F.3d at 549-50; *see also Todd Cty. v. Barlow Projects, Inc*., 2005 WL 1115479, at *8 (D. Minn. May 11, 2005) (dismissing omission claim because "bare assertions" and "conclusory" statements were "insufficient to meet the heightened pleading standard" under Rule 9(b)). With respect to their fraudulent omission claim in particular, plaintiffs do not allege "where" or "how," *Parnes*, 122 F.3d at 550, any Polaris employee should have "disclose[d] the defect." (¶251.)

Plaintiffs claim that they either "overpaid" or "would not have purchased" their vehicles if the alleged defect "had been disclosed to them," (¶257), but admit they consulted different sources before making their purchases. (*Compare, e.g.*, ¶24 (Bruner "reviewed Defendants' promotional materials," "conducted online research," "viewed Defendants' commercials," and "discussed … with a salesperson" his vehicle prior to purchase) *with* ¶30 (Luna "communicated with friends" and "discussed ... with a salesperson" his vehicle prior to purchase). The particulars of where and how each plaintiff

---

*Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731-32 (M.D.N.C. 2015); (**Ohio**) *Sheetz v. Consumer Research Corp*., 2008 WL 11350242, at *2-3 (S.D. Ohio June 23, 2008); (**Tex.**) *Omni USA, Inc. v. Parker-Hannifin Corp*.,  798 F. Supp. 2d 831, 852 (S.D. Tex. 2011).

claims Polaris should have disclosed the alleged defect bears directly on Polaris' liability. As the purpose of Rule 9(b) is to give defendants "sufficient notice[]…to permit the preparation of an effective defense," plaintiffs' recitation of their claims' legal elements and generic assertions about Polaris' conduct fall short and do not satisfy the Rule. *Parnes*, 122 F.3d at 549 (quoting *Weisburgh v. St. Jude Med, Inc.*, 158 F.R.D. 638, 642 (D. Minn. 1994), *aff'd*, 62 F.3d 1422 (8th Cir. 1995)). Because plaintiffs' fraud-based claims lack the specificity Rule 9(b) requires, they should be dismissed.

**B.    The Economic Loss Doctrine Bars Fraud Claims Under Florida, Michigan, North Carolina, And Texas Law (Counts 15, 29, 36, 39, 49).**

The "economic loss doctrine" bars plaintiffs' fraudulent omission claims under Florida, Michigan, North Carolina, and Texas law and consumer fraud claims under North Carolina law. The Florida Supreme Court has held that the economic loss rule applies to products liability cases. *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So.3d 399, 407 (Fla. 2013). This rule prohibits tort actions for economic loss, including "damages for inadequate value" and "diminution in the value." *Id.* at 401. To give *Tiara* effect, courts applying Florida law have held that the economic loss rule bars fraud product liability claims. In *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013), plaintiff's claims for negligent misrepresentation and fraudulent concealment sought "relief due to the inferior quality of the RV, which did not meet his expectations due to…corrosion." *Id.* at *3.

*Burns* dismissed plaintiff's claims, explaining that to "hold otherwise would allow

29

the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Id.* at *4; *see also In re Gen. Motors LLC Ignition Switch Litig.,* 2016 WL 3920353, at *28 (economic loss rule barred claim where "the only viable basis for [plaintiff's] fraud claim is that New GM failed to disclose a known defect in her car at the time of purchase."); *Aprigliano v. Am. Honda Motor Co.,* 979 F. Supp. 2d 1331, 1337-38 (S.D. Fla. 2013); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015) (applying Florida law). Accordingly, the fraudulent omission claim of Florida plaintiff Halvorsrod should be dismissed with prejudice.

Michigan holds that the economic loss doctrine bars fraud claims seeking economic losses where the alleged fraud is based on a product's "quality and characteristics." *See Gen. Motors Corp. v. Alumi-Bunk, Inc.*, 757 N.W.2d 859 (Mich. 2008) (affirming summary disposition against fraudulent inducement claim based on the economic loss doctrine); *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545-46 (Mich. App. 1995) (holding that fraud claims are barred unless they are extraneous to and independent of parties' contract, and that the economic loss rule applies to "fraudulent representations alleged by plaintiff concern[ing] the quality and characteristics of the software system sold by defendants"); *Citizens Ins. Co. v. Osmose Wood Pres., Inc.*, 231 Mich. App. 40, 46–47 (1998) (affirming dismissal of fraudulent inducement claim because

30

alleged misrepresentations "relate solely to the quality and characteristics of defendant's [products].   In essence, plaintiff's fraud claim is merely a restatement of its breach of warranty claim.").   Here, plaintiffs' allegations concern the quality and characteristics of their vehicles—specifically that the vehicles are defective—and consequently Michigan plaintiff Rogers' fraud claims are barred.

In Texas, the economic loss rule bars all fraud claims other than fraud in the inducement.   In *Heil Co. v. Polar Corp.*, the plaintiff alleged that the defendant had fraudulently represented that it owned certain property that it did not own.   191 S.W.3d 805 (Tex. App. 2006).   Seeking to avoid the economic loss rule, the plaintiff invoked the decision in *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors*, 960 S.W.2d 41 (Tex. 1998).   But the *Heil* court "decline[d] to adopt [plaintiff's] broad interpretation of *Formosa*," explaining that in "*Formosa*, the claim at issue was *fraudulent inducement*, not fraud." 191 S.W.3d at 816 (emphasis in original).   Relying on subsequent Texas Supreme Court jurisprudence, *Heil* concluded that "the *Formosa* holding rejecting the independent injury requirement in fraudulent inducement claims is inapplicable under the facts of this case…" *Id.* at 817.   The *Heil* court thus held that the economic loss doctrine applied and that plaintiff was "unable to state a cause of action for fraud as a matter of law because it has suffered no independent injury." *Id.*   Other Texas courts have similarly applied the economic loss doctrine to fraud claims.   *See*, *e.g., Mays v. Pierce*, 203 S.W.3d 564, 573 n.15 (Tex. App. 2006) ("[W]e conclude the *Formosa* court's rejection of the independent injury rule is limited to fraudulent inducement claims and does not extend to fraud

31

generally."); *Hameed Agencies (pvt) Ltd. v. J.C. Penney Purchasing Corp.*, 2007 WL 431339, at *5 (Tex. App. Feb. 8, 2007); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, 2010 WL 1996596, at *7 n.8 (S.D. Tex. May 17, 2010).  Given Texas law, Forrest fails to state a valid fraudulent omission claim.[18]  (¶¶702-711.)

Similarly, the economic loss rule also bars common law fraud claims and claims under North Carolina's UDTPA.  *See, e.g., Bussian,* 411 F. Supp. 2d at 626 (noting economic loss rule extends to claims of common law fraud and unfair or deceptive trade practices); *see also Coker v. DaimlerChrysler Corp.,* 2004 WL 32676, at *3 n.3 (N.C. Super. Jan. 5, 2004), *aff'd*, 172 N.C. App. 386 (2005), *aff'd*, 360 N.C. 398, (N.C. 2006) ("The unfair trade practice claim is based upon the same theories of liability and damages as the common law fraud claim.  To permit recovery for this claim under the [UPDTA] would also eviscerate the contract/warranty system and the economic loss rule.").  As such, North Carolina plaintiff Bailey's consumer fraud and fraudulent omission claims should be dismissed.

---

[18] Although Forrest alleges "Polaris intended to induce, and did induce, Plaintiff and the other Class members to purchase or lease a Class vehicle" (¶710), this cursory reference does not convert the claim to one for fraudulent inducement.  Moreover, such a bare assertion does not meet Rule 9(b)'s heightened pleading standard. *See Murphree v. Godshall,* 2014 WL 4782936, at *6 (S.D. Tex. Sept. 24, 2014) ("[A] party must allege all of the elements of fraud in addition to the fact that he entered into a binding agreement as a result of an alleged misrepresentation.").  *See* Section V.A. *supra.*

C.     **Florida, Michigan, and Texas Do Not Impose A Duty To Disclose Under The Facts Alleged By Plaintiffs (Counts 15, 29, 49).**

Fraudulent omission requires a duty to disclose the allegedly concealed information. Without a duty to disclose, plaintiffs' fraudulent omission claims fail as a matter of law. Florida, Michigan, and Texas do not impose any duty to disclose under the allegations here, so the fraudulent omission claims of plaintiffs from those states should be dismissed.

In Florida, a duty to disclose exists only if the parties have a fiduciary, confidential, or other special relationship. *See TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. Dist. App. 2000) ("[K]nowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose. Such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them.") (internal quotation and citation omitted); *State v. Mark Marks, P.A.*, 698 So. 2d 533, 539 (Fla. 1997) (same). No such relationship exists here, and thus Florida plaintiff Halvorsrod's fraudulent omission claim should be dismissed.

Michigan law holds that, for "silent fraud" (that state's fraudulent omission equivalent), a duty to disclose arises only where the plaintiff specifically inquires about an issue and the defendant provides misleading information. *See M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 38-39 (Mich. App. 1998) ("[F]raud by nondisclosure [is] based upon statements by the vendor that were made *in response to a specific inquiry* by the purchaser, which statements were in some way incomplete or misleading.") (emphasis

33

added). The Michigan Supreme Court adopted *McConkey's* analysis.  *See Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 550 (Mich. 2000) (plaintiff failed to establish a silent fraud claim where "[t]here was no evidence that the plaintiff made any inquiry about the financial condition of the company in general or requested updated financial data in particular"). "[A] direct inquiry (or the functional equivalent) is a *sine qua non* of a fraudulent concealment claim under Michigan law."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 375, 424 (dismissing silent fraud claims because "Plaintiffs do not allege that they made any inquiries directly to [defendant] New GM regarding the safety of their vehicles or the existence of any potential defects.") (quoting *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 666 (6th Cir. 2013).

Here, Michigan plaintiff Rogers does not allege that he made any inquiries to Polaris, let alone inquiries about the components or issues that form the basis of the complaint. (¶¶51-56, 504-515.) Absent such facts, Polaris had no duty to disclose under Michigan law and his claim should be dismissed.

Under Texas law, "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Gonzalez v. Nat'l Ins. Crime Bureau*, 427 F. App'x 394, 398 (5th Cir. 2011) (same); *see also In re Gen. Motors LLC*, 257 F. Supp. 3d at 454 (dismissing fraudulent concealment claim "[b]ecause none of the Texas Plaintiffs interacted with New GM directly"); *Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d 347, 352-53 (5th Cir. 1997)

34

("Under Texas law, in the absence of a duty to disclose, mere silence does not amount to fraud or misrepresentation.").

Here, Texas plaintiff Forrest does not and cannot allege a fiduciary relationship with Polaris. Nor does he allege a confidential relationship, which requires that "the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674 ("subjective trust does not transform arm's-length dealing into a fiduciary relationship"); *Garcia*, 127 F. Supp. 3d at 237 (dismissing concealment claims because plaintiffs did not allege Chrysler had duty to disclose). Thus, Forrest's fraudulent omission claim fails.

## CONCLUSION

With the exception of plaintiff Luna's warranty claims, each of the plaintiffs' claims should be dismissed. Moreover, except for plaintiffs' claims sounding in fraud, each of plaintiffs' claims suffer from legal deficiencies that cannot be cured through re-pleading.

Respectfully submitted,

Dated:  August 27, 2018

*/s/ Wendy J. Wildung*
Wendy J. Wildung (MN #117055)
Faegre Baker Daniels LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
Tel: (612) 766-7759
Wendy.wildung@FaegreBD.com

*/s/ Richard C. Godfrey, P.C.*
Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
Paul Collier (admitted pro hac vice)
R. Allan Pixton (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL  60654-3406
Phone:  (312) 862-2000
Fax:  (312) 862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com
paul.collier@kirkland.com
allan.pixton@kirkland.com

*Attorneys for Defendants Polaris Industries Inc. and Polaris Sales Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2018, I electronically filed the foregoing using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Wendy J. Wildung*
Wendy J. Wildung