UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Polaris Marketing, Sales Practices, and Products Liability Litigation. | Case No. 18-cv-0939 (WMW/DTS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

In this consolidated putative class action litigation, Defendants move to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead fraud with particularity and failure to state a claim on which relief can be granted. (Dkt. 42.) For the reasons addressed below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are eleven individuals who reside in eleven states throughout the United States.[1] Defendant Polaris Industries, Inc., is a Delaware corporation based in Minnesota and Defendant Polaris Sales Inc., a subsidiary of Polaris Industries, is a Minnesota corporation also based in Minnesota. Defendants design and manufacture off-road vehicles and their component parts, including engines. In the past five years, Plaintiffs each purchased an off-road vehicle manufactured by Defendants.

---

[1] Plaintiffs are James Bruner of Alabama, Jose Luna of California, Clint Halvorsrod of Florida, Robert Lenz of Georgia, Michael Zeeck of Illinois, Chad Rogers of Michigan, Richard Berens of Minnesota, Steve Bailey of North Carolina, Michael Jacks of Ohio, Bryan Forrest of Texas, and Ed Beattie of Nebraska.

Between 2013 and 2018, Defendants recalled more than one dozen off-road vehicle models (collectively, the "class vehicles"), including the vehicles purchased by Plaintiffs. These recalls occurred because of a design defect that creates a significant risk of overheating and catching fire. This design defect has caused more than 250 fires, more than 30 severe injuries, and at least three deaths. According to Plaintiffs, the design defect is common to all the class vehicles, which are equipped with an unusually high-powered "ProStar" engine. Three of the eleven Plaintiffs, Jose Luna, Clint Halvorsrod, and Chad Rogers, allege that the off-road vehicles that they purchased caught fire while operating, which resulted in a total loss of the vehicles.

Plaintiffs commenced multiple putative class-action lawsuits against Defendants in or about April 2018 arising from the defects and fire hazards associated with the class vehicles. Subsequently, United States Magistrate Judge David T. Schultz consolidated these cases and appointed interim counsel to act on behalf of the putative class, pursuant to Federal Rules of Civil Procedure 23(g)(3) and 42(a). Magistrate Judge Schultz also ordered Plaintiffs to file a consolidated amended complaint, which Plaintiffs filed on June 15, 2018. The amended complaint alleges 54 counts against Defendants. Count 1 alleges that Defendants breached a written warranty and an implied warranty of merchantability, in violation of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301 *et seq*. Counts 2 through 54 allege violations of state laws in the eleven states in which Plaintiffs purchased defective off-road vehicles. These claims allege violations of state consumer fraud laws, breaches of express and implied warranties, fraudulent

2

omission, and unjust enrichment. As a result of the engine defects, Plaintiffs allege, their vehicles have diminished in value. Plaintiffs either would not have purchased their vehicles or they would have paid significantly less for their vehicles had they known about the engine defects. Plaintiffs seek injunctive and monetary relief. But they expressly do *not* seek damages for any personal injuries resulting from the engine defects.

Defendants move to dismiss each count except Counts 7, 8, 9, and 12, which allege violations of California law with respect to Plaintiff Jose Luna. Advancing several alternative arguments, Defendants maintain that Plaintiffs claims must be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead fraud with particularity and failure to state a claim on which relief can be granted. First, Defendants contend that most of Plaintiffs' state-law claims must be dismissed because they do not allege that the defect manifested in their vehicles. Second, Defendants argue that most of Plaintiffs' warranty claims must be dismissed in light of Defendants' limited warranty because Plaintiffs do not allege pre-suit notice and the viability of Plaintiffs' MMWA claim depends on Plaintiffs' state-law warranty claims. Third, Defendants assert that Plaintiffs' unjust enrichment claims must be dismissed because Plaintiffs have an adequate remedy at law and Plaintiffs did not directly confer a benefit on Defendants. Fourth, Defendants argue that Plaintiffs' fraudulent omission and consumer fraud claims must be dismissed because Plaintiffs either fail to plead fraud with particularity or the claims are barred by the applicable state laws.

**ANALYSIS**

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 678.

**I.    Standing (Counts 2-6, 17-25, and 31-54)**

Defendants contend that eight of the eleven Plaintiffs—those who do *not* allege that their vehicles experienced overheating or caught fire—lack standing under Article III of the United States Constitution. As a jurisdictional prerequisite, standing must be established before reaching the merits of a lawsuit, *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007), and a federal district court must dismiss any aspect of a lawsuit over which it lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3). For these reasons, the Court addresses the standing issue first.

The jurisdiction of federal courts only extends to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *accord Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). To satisfy the case-or-controversy requirement of Article III, a plaintiff must establish standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). A court determines standing based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4.

To satisfy the requirements of standing, each plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship between the contested conduct and the alleged injury, and (3) show that a favorable decision would redress the injury. *Id.* at 560-61; *accord Hargis*, 674 F.3d at 790. Only the injury-in-fact requirement is at issue here. An injury in fact "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). The imminence requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* (internal quotation marks omitted). Allegations of a possible future injury do not confer standing. *Id.* In addition, "standing must be particularized, meaning the alleged 'injury must affect the plaintiff in a *personal and individual* way.' " *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560 n.1).

To satisfy the injury-in-fact requirement arising from a defective product, a plaintiff must allege that the particular product purchased by the plaintiff exhibited the alleged

defect. *Id.* (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)). Allegations that a product line contains a defect or that a product poses a risk of exhibiting a defect are insufficient. *Id.* (citing *Zurn*, 644 F.3d at 616). Moreover, to assert claims as a class representative in a putative class action lawsuit, the class representative must have standing to assert his or her own claims. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999).

In *Wallace*, for example, when several consumers sought to represent a class of all purchasers of the defendant's beef products over a multi-year period, the United States Court of Appeals for the Eighth Circuit held that the plaintiffs had not pleaded the requisite injury in fact for Article III standing. 747 F.3d at 1027, 1030. The plaintiffs in *Wallace* alleged that not all of the hot dogs the defendant sold were 100% kosher, as defendant had advertised. *Id.* at 1030-31. But the plaintiffs did not allege that they had purchased or consumed any defective hot dogs. *Id.* Although the plaintiffs' alleged economic injury was concrete, the injury was neither "particularized" nor "actual." *Id.* at 1029-30.

Here, eight of the eleven Plaintiffs—Bruner, Lenz, Zeeck, Berens, Bailey, Jacks, Forrest, and Beattie—have failed to allege an injury in fact sufficient to confer Article III standing as to their claims. These Plaintiffs do not allege that their vehicles malfunctioned in any way. There are no allegations that their vehicles ever overheated, caught fire, or otherwise failed to perform as intended. Instead, the amended complaint repeatedly

6

references the "risk" or "propensity" of malfunctions, such as overheating or catching fire, that "could" or "may" occur in some vehicles.[2]

To distinguish this case from *Wallace*, Plaintiffs argue that the vehicles they purchased contain an "inherent" defect that creates an "ever-present safety risk." But this distinction falls short. In *Zurn*, a putative class of homeowners alleged that brass fittings used in the defendant's plumbing systems were inherently defective because they were susceptible to stress corrosion cracking. 644 F.3d at 609. The Eighth Circuit concluded that the homeowners whose pipes had *not* leaked had adequately pleaded an injury in fact by alleging "a universal inherent defect" supported by expert testimony. *Id.* at 617. That injury was "already manifest in all systems" because it necessarily "afflict[ed] all of the [products] upon use." *Id.* No such allegations or expert testimony exists here. *See Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 864-65 (D. Minn. 2012) (concluding that plaintiffs lacked Article III standing because their broad allegation that *all* the products *ever* sold by defendants failed to comply with applicable safety standards was unsupported by plausible facts).

---

[2] Plaintiffs repeatedly assert that they should not have to wait for an extreme harm to occur, such as their vehicles catching fire, before bringing their claims. But this argument fails for at least two reasons. First, Article III precludes a plaintiff from seeking relief in federal court absent an actual or imminent harm. Second, to satisfy the injury-in-fact requirement of Article III, an injury need not be *catastrophic*. But there must be an injury in fact. The pleading deficiency here exists as to eight of the Plaintiffs because the amended complaint does not allege that *any* malfunctions occurred. Their allegation that the *risk* of a possible future malfunction exists is insufficient.

7

Here, the amended complaint does not allege, directly or by reasonable inference, that *all* of the vehicles that contain the defective engine *necessarily* overheat, catch fire, or otherwise malfunction. The amended complaint merely alleges that the vehicles have an "unreasonable *propensity* to catch fire," create a "*risk* of overheating and fire," or "*could* overheat and melt," not that the class vehicles will inevitably exhibit a defect. (Emphasis added.) Although Plaintiffs allege that dozens of vehicle models contain the allegedly defective engine, for the purpose of Article III standing, "it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect." *Wallace*, 747 F.3d at 1030 (quoting *Zurn*, 644 F.3d at 616). Here, eight of the eleven Plaintiffs allege that, because they purchased a vehicle from a product line that contains a defect, their vehicle is *at risk* of manifesting the defect. Such allegations are insufficient to establish Article III standing in a product-defect case. *Id.*

Plaintiffs also rely on the specific laws of their respective states to argue that they have sufficiently alleged an injury. But in *Wallace*, the Eighth Circuit rejected a similar argument. That some states may "have created causes of action that do not require a particularized showing of individual injury" does not lower the threshold necessary to satisfy Article III standing in federal court. *Id.* at 1031-32. Even if the eight Plaintiffs whose vehicles did *not* manifest a defect could bring their state law claims in state court, those Plaintiffs have not alleged a "particularized" or "actual" injury, which is necessary to establish Article III standing in *federal court*. *See id.* at 1031-33 (concluding that

8

Article III standing had not been established even assuming that plaintiffs could assert the same consumer fraud and warranty claims in state court).

Plaintiffs Bruner, Lenz, Zeeck, Berens, Bailey, Jacks, Forrest, and Beattie lack Article III standing to pursue their claims in this Court because they have not alleged a "particularized" and "actual" injury in fact. Consequently, the following counts are dismissed without prejudice for lack of subject-matter jurisdiction: Count 1 (to the extent asserted by the foregoing plaintiffs); Counts 2 through 6 (asserted by Plaintiff Bruner); Counts 17 through 25 (asserted by Plaintiffs Lenz and Zeeck); and Counts 31 through 54 (asserted by Plaintiffs Berens, Bailey, Jacks, Forrest, and Beattie).

## II. Breach-of-Warranty Claims of Plaintiffs Halvorsrod and Rogers (Counts 14, 27, and 28)

Defendants next argue that the breach-of-warranty claims asserted by Plaintiffs Halvorsrod and Rogers must be dismissed because the amended complaint fails to allege that these plaintiffs gave Defendants the requisite pre-suit notice of an alleged breach of warranty.

Plaintiffs Halvorsrod and Rogers allege that Defendants breached their express warranty, in violation of Florida and Michigan law, respectively. *See* Fla. Stat. §§ 672.313, 680.21; Mich. Comp. Laws § 440.2313. Plaintiff Rogers also alleges that Defendants breached the implied warranty of merchantability, in violation of Michigan law. *See* Mich. Comp. Laws §§ 440.2314, 440.2862. Defendants respond that Plaintiffs Halvorsrod and Rogers failed to give pre-suit notice of an alleged breach of warranty, as required by Florida and Michigan law.

9

To recover on a breach-of-warranty claim under Florida law, the "buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *see also Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (granting motion to dismiss breach of express warranty claim because plaintiff failed to "allege that he ever notified Defendants of the alleged breach of a warranty"). Michigan law has a materially identical pre-suit notice requirement. *See* Mich. Comp. Laws § 440.2607(3)(a); *see also Johnston v. PhD Fitness, LLC*, No. 16-cv-14152, 2018 WL 646683, at *3-4 (E.D. Mich. Jan. 31, 2018) (granting motion to dismiss express and implied warranty claims because plaintiff did not provide pre-suit notice to defendant) (citing *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d 223, 232 (Mich. Ct. App. 2013)).

Neither Halvorsrod nor Rogers provided pre-suit notice to Defendants, as is required by their states' laws. Plaintiffs contend that Defendants' actual knowledge of the engine defect satisfies any pre-suit notice requirements, but Plaintiffs cite no Michigan or Florida legal authority to support this argument. And Plaintiffs' argument is inconsistent with case law in which courts in both Michigan and Florida, applying their respective state laws, have dismissed breach-of-warranty claims for failure to comply with the pre-suit notice requirement. *See, e.g.*, *Johnston*, 2018 WL 646683, at *3-4; *Jovine*, 795 F. Supp. 2d at 1340.

For these reasons, the breach-of-warranty claims asserted by Plaintiffs Halvorsrod and Rogers (Counts 14, 27, and 28) are dismissed without prejudice. And because an

MMWA claim requires an underlying state-law breach-of-warranty claim, Count 1, as asserted by Plaintiffs Halvorsrod and Rogers, also is dismissed without prejudice. *See Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009).

### III. Unjust-Enrichment Claims of Plaintiffs Luna, Halvorsrod, and Rogers (Counts 11, 16, and 30)

Defendants also seek dismissal of the unjust-enrichment claims asserted by Plaintiffs Luna, Halvorsrod, and Rogers because these Plaintiffs have an adequate remedy at law, as demonstrated by their alternative claims for violations of the MMWA and state consumer protection laws, breach of warranty, and fraudulent omission. Plaintiffs counter that these claims are permissible as pleaded in the alternative.

A party may plead alternative or inconsistent claims or defenses. Fed. R. Civ. P. 8(d)(2)-(3). For this reason, courts routinely decline to dismiss unjust-enrichment claims when pled in the alternative. *See, e.g.*, *United States v. R.J. Zavoral & Sons, Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (concluding that plaintiff "may maintain this [unjust-enrichment] claim as [an] alternative claim for relief under Rule 8 of the Federal Rules of Civil Procedure"); *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together" and declining to dismiss plaintiff's unjust-enrichment claim on that basis). Such disposition also is warranted here.

Defendants argue alternatively in favor of dismissing the unjust-enrichment claims asserted by Plaintiffs Halvorsrod and Rogers because, by purchasing their vehicles from independent dealerships, these Plaintiffs only *indirectly* conferred a benefit on Defendants.

Absent an allegation that a benefit was directly conferred on Defendants, a claim for unjust enrichment cannot proceed under either Florida law or Michigan law, Defendants contend. Plaintiffs disagree, maintaining that neither Florida law nor Michigan law requires direct conferral of a benefit on a defendant to support an unjust-enrichment claim.

To state a claim for unjust enrichment under Florida law, a plaintiff must "allege that it had *directly* conferred a benefit on the defendants." *Century Senior Servs. v. Consumer Health Benefit Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App. 1996)); *see also City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277-78 (11th Cir. 2015) (affirming dismissal of an unjust enrichment claim when there was "not a benefit directly conferred on the [defendant], as is required for an unjust enrichment claim under Florida law") (citing *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009)). Courts applying Florida law have dismissed unjust-enrichment claims under the same circumstances presented here, namely, when the plaintiff did not purchase the allegedly defective vehicle directly from the defendant manufacturer's dealership. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d 1241, 1261 (S.D. Fla. 2017). Here, the amended complaint alleges that Plaintiff Halvorsrod purchased his vehicle from "Sky Powersports" in Florida. Plaintiffs neither allege in the amended complaint nor argue that Sky Powersports is Defendants' dealership.

Without distinguishing the Florida legal authority addressed here, Plaintiffs rely on a single non-precedential decision that reached a different conclusion. *See Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-21411, 2014 WL 12513613, at *3 (S.D. Fla. Mar. 6, 2014) (concluding that "the conferred benefit must have originated from the plaintiff and arrived in the defendant's possession"). Plaintiffs' reliance on *Solidda* despite substantial contrary authority is unpersuasive. Moreover, because the amended complaint does not allege that any payments to Sky Powersports subsequently arrived in Defendants' possession, *Solidda*'s reasoning is inapplicable to the facts here. *See id.* In summary, Plaintiff Halvorsrod fails to state a claim of unjust enrichment under Florida law.

Plaintiff Rogers's unjust-enrichment claim under Michigan law fares no better. "Michigan law requires a direct benefit *or* some sort of direct interaction between Plaintiffs and [defendant]." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) (emphasis added) (applying Michigan law and dismissing unjust enrichment claims involving allegedly defective products by plaintiffs who did not purchase their products directly from defendant manufacturer). The amended complaint alleges that Plaintiff Rogers purchased his vehicle from "T&C Powersports" in Michigan. Plaintiffs neither allege in the amended complaint nor argue that T&C Powersports is one of Defendants' dealerships, or that Plaintiff Rogers otherwise had any direct contact or interaction with Defendants. As such, Plaintiff Rogers fails to state a claim of unjust enrichment under Michigan law.

Defendants' motion to dismiss the unjust-enrichment claims asserted by Plaintiffs Halvorsrod and Rogers (Counts 16 and 30) is granted. These claims are dismissed without prejudice. Defendants' motion to dismiss Plaintiff Luna's unjust-enrichment claim (Count 11) is denied.

### IV. Fraud Claims of Plaintiffs Luna, Halvorsrod, and Rogers (Counts 10, 13, 15, 26, and 29)

Defendants next argue in favor of dismissing the fraudulent-omission and consumer-fraud claims asserted by Plaintiffs Luna, Halvorsrod, and Rogers because these claims are not pleaded with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). Alternatively, the fraudulent-omission claims of Plaintiffs Halvorsrod and Rogers are barred by Florida law and Michigan law, Defendants argue. Each argument is addressed in turn.

#### A. Rule 9(b)

Plaintiffs maintain that the particularity requirements of Rule 9(b) do not apply to Plaintiff Halvorsrod's claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).[3] While "Rule 9(b) might not apply to FDUTPA claims premised solely or primarily on unfair trade practices," Florida courts have applied Rule 9(b) to FDUTPA claims alleging fraud. *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225-26 (S.D. Fla. 2017) (collecting cases and applying particularity requirements of Rule 9(b) to FDUTPA claim based on alleged fraud). The amended complaint before this Court alleges that Defendants

---

[3] Plaintiffs do not dispute that the Rule 9(b) requirements apply to the remaining fraud claims at issue here.

14

engaged in "deceptive acts in violation of" FDUTPA, including intentional omissions that "deceived" Plaintiff Halvorsrod and others.  Because Plaintiff Halvorsrod's FDUTPA claim is founded on alleged fraud, the requirements of Rule 9(b) apply to his FDUTPA claim along with the remaining fraud claims of Plaintiffs Luna, Halvorsrod, and Rogers. The Court analyzes these remaining fraud claims together under Rule 9(b).

When pleading fraud claims, both statutory and common law, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) (statutory); *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (common law).  The degree of particularity required by Rule 9(b) depends on the nature of the case.  *E-Shops Corp.*, 678 F.3d at 663.  But conclusory allegations that the defendant's conduct was fraudulent and deceptive do not satisfy Rule 9(b).  *Id.*  "Instead, the complaint must set forth the who, what, when, where, and how surrounding the alleged fraud."  *Id.* (internal quotation marks omitted).  The primary purpose of this particularity requirement is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud."  *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).  While Rule 9(b) does not require a plaintiff to allege the precise details of every instance of fraud, the complaint must include details that "inform the defendant of the core factual basis for

the fraud claims." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (internal quotation marks omitted).

Defendants do not dispute that Plaintiffs have adequately alleged "what" was fraudulently omitted (*i.e.*, the existence and details of the alleged engine defect) or "why" it was fraudulently omitted (*i.e.*, to encourage sales). Rather, Defendants argue that the amended complaint insufficiently alleges the who, when, where, and how of the alleged fraud. Plaintiffs disagree.

With respect to the "who," Defendants argue that the amended complaint does not specify which person should have disclosed the defect. But a plaintiff need not identify precisely which employee used which words to sell an allegedly defective product. *See, e.g.*, *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 945 (D. Minn. 2009) (concluding that complaint in defective product case satisfied Rule 9(b) even though it did "not identify precisely which Medtronic employee used which words to sell the particular device"). The amended complaint alleges that Defendants knew about a potentially dangerous defect in its vehicles and continued to sell the vehicles in multiple states without warning of the defect. That specific employees of Defendants are not identified in the amended complaint does not prevent Defendants from responding to the allegations.

As to the "when" of the alleged fraud, Defendants contend that the amended complaint fails to allege the precise time of the alleged omissions. But in circumstances similar to those presented here, courts in this District repeatedly have concluded that allegations of fraud need not identify dates precisely. For example, the plaintiff in *Johnson*

16

*v. Bobcat Co.* had not alleged a timeframe at all, but the court rejected a Rule 9(b) challenge. 175 F. Supp. 3d 1130, 1146 (D. Minn. 2016). The court concluded that it could "reasonably infer the timeframe during which Johnson reviewed [the website's] content— in the several weeks or months immediately preceding his purchase"—and that this inference, together with the plaintiff's other allegations, provided "more than enough information to adequately respond and prepare a defense, which is the critical inquiry under Rule 9(b)." *Id.* Other courts have reached the same conclusion in comparable circumstances. *See, e.g.*, *Solvay Pharm., Inc. v. Global Pharm.*, 298 F. Supp. 2d 880, 885-86 (D. Minn. 2004) (plaintiff's allegation that the defendants had been improperly marketing their products for "[s]everal years" satisfied Rule 9(b)); *see also Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007) (plaintiff sufficiently pleaded that alleged false advertising occurred "since the late 1990's"). Here, the amended complaint alleges the approximate dates on which Plaintiffs Luna, Halvorsrod, and Rogers purchased their vehicles and that these Plaintiffs researched Defendants' vehicles before making their purchases. These allegations illustrate that Plaintiffs pleaded the "when" of the alleged fraud with sufficient particularity to facilitate Defendants' ability to respond and to prepare a defense.

Finally, Defendants contend that the amended complaint fails to allege "where" or "how" the alleged fraudulent omissions occurred. This argument also is unavailing. The amended complaint alleges that Plaintiffs Luna, Halvorsrod, and Rogers researched Defendants' products before purchasing their vehicles. This research included reviewing

Defendants' promotional materials, website, and commercials. "It stands to reason that [a defendant] can navigate its own website," *Johnson*, 175 F. Supp. 3d at 1146, and Defendants here are in the best position to know what content they placed on their website and in their promotional materials and commercials during the relevant timeframe. As presented, the "where" and "how" of the alleged fraud are pleaded with sufficient particularity to facilitate Defendants' ability to respond and to prepare a defense.

Because the fraudulent-omission and consumer-fraud claims of Plaintiffs Luna, Halvorsrod, and Rogers satisfy the particularity requirements of Rule 9(b), Defendants' motion to dismiss those claims on this basis is denied.

### B.  Fraudulent-Omission Claims of Plaintiffs Halvorsrod and Rogers

Defendants argue, in the alternative, that the fraudulent-omission claims of Plaintiffs Halvorsrod and Rogers are barred by the economic loss doctrine under Florida law and Michigan law.

Under Florida law, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So.3d 399, 401 (Fla. 2013). This rule applies in the defective products context. *Id.* at 403. The Florida Supreme Court has defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* at 401 (internal quotation marks omitted). The amended complaint here expressly does not seek damages for personal

injuries. Nor does the amended complaint seek repair or replacement costs or claim damage to other property. Because of these deficiencies, Plaintiff Halvorsrod's fraudulent-omission claim is barred by Florida law.[4]

Similarly, under Michigan law, when "a purchaser's expectations in a sale are frustrated because the product [the purchaser] bought is not working properly, [the purchaser's] remedy is said to be in contract alone, for [the purchaser] has suffered only economic losses." *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992) (internal quotation marks omitted); *accord Gen. Motors Corp. v. Alumi-Bunk, Inc.*, 757 N.W.2d 859, 859 (Mich. 2008) (affirming dismissal of fraud claim based on economic loss doctrine). Michigan courts have applied the economic loss doctrine "in the context of various transactions for goods or products to bar recovery in tort." *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 862 (Mich. Ct. App. 2002) (collecting cases). Michigan courts also have applied the economic loss doctrine to the sale of consumer goods. *Id.*; *see also Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 790 (Mich. Ct. App. 2002) (concluding that economic loss doctrine applied when the individual consumer plaintiff purchased defective boat from defendant manufacturer). The only purported omissions that Plaintiff Rogers identifies in the amended complaint pertain to the quality

---

[4] Plaintiffs contend that Florida's economic loss doctrine does not apply to fraudulent inducement claims. But this argument misses the mark. Plaintiffs do not allege fraudulent inducement claims in the amended complaint. Moreover, courts applying the *Tiara* holding have concluded that "Florida's Supreme Court did not intend to allow [fraudulent inducement] products liability claims to survive." *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016). Plaintiffs' argument is unavailing.

19

of the vehicle he purchased. This is the same subject matter underlying the warranty applicable to Plaintiff Rogers's vehicle. Because Michigan's economic loss doctrine limits Plaintiff Rogers to seeking contract remedies in these circumstances, the fraudulent-omission claim that Plaintiff Rogers alleges is barred by Michigan law.

In summary, Defendants' motion to dismiss is granted as to the fraudulent-omission claims asserted by Plaintiffs Halvorsrod and Rogers (Counts 15 and 29). Those claims are dismissed with prejudice. Defendants' motion to dismiss is denied as to the fraudulent-omission claim of Plaintiff Luna (Count 10) and the consumer-fraud claims of Plaintiffs Halvorsrod and Rogers (Counts 13 and 26).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss, (Dkt. 42), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2. Count 1, as asserted by all Plaintiffs except Plaintiff Luna, Counts 2 through 6, Count 14, Counts 16 through 25, Counts 27 and 28, and Counts 30 through 54 of the amended complaint, (Dkt. 35), are **DISMISSED WITHOUT PREJUDICE**.

3. Counts 15 and 29 of the amended complaint, (Dkt. 35), are **DISMISSED WITH PREJUDICE**.

Dated: March 6, 2019                                s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge