# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE POLARIS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | 18-CV-0939 (WMW-DTS) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT

Wendy J. Wildung (MN #117055)
Faegre Baker Daniels LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
Tel: (612) 766-7759
wendy.wildung@FaegreBD.com

Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
Paul Collier (admitted pro hac vice)
R. Allan Pixton (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL 60654-3406
Tel: (312) 862-2000
Fax: (312) 862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com
paul.collier@kirkland.com
allan.pixton@kirkland.com

*Attorneys for Defendants Polaris Industries Inc. and Polaris Sales Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF ALLEGED AND JUDICIALLY NOTICEABLE FACTS ............................ 4

    A.    The Parties. ........................................................................................ 4

    B.    Plaintiffs' Vehicles Were Covered by Polaris' Limited Warranty. ........................ 6

    C.    Plaintiffs' Claims And Alleged Damages. ................................................. 7

ARGUMENT ..................................................................................................... 7

I.    THE UNAFFECTED PLAINTIFFS SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO ALLEGE A MANIFEST DEFECT ............................ 7

    A.    Seven Unaffected Plaintiffs Lack Article III Standing To Assert Claims. ............. 8

    B.    The Unaffected Plaintiffs' Claims Fail Under Well-Settled Precedent. ............... 12

    C.    Six Unaffected Plaintiffs' Claims Also Fail Under State Law Because They Allege No Manifest Defect. ......................................................... 15

II.    THE MAJORITY OF PLAINTIFFS' WARRANTY AND MAGNUSON-MOSS CLAIMS FAIL AS A MATTER OF LAW. ................................................... 18

    A.    Eleven Plaintiffs' UCC Warranty Claims Are Barred Because They Do Not Allege Pre-Suit Notice. ................................................................. 20

    B.    Thirteen Plaintiffs' Express Warranty Claims Are Barred By Polaris' Limited Warranty. ................................................................. 20

    C.    Ten Plaintiffs' Implied Warranty Claims Are Barred By Polaris' Limited Warranty. ................................................................. 23

    D.    Plaintiffs' Magnuson-Moss Claims Should Be Dismissed. ........................... 25

III.    THE UNJUST ENRICHMENT CLAIMS OF SEVERAL PLAINTIFFS FAIL. ............ 26

    A.    Certain Unjust Enrichment Claims Fail Because Plaintiffs Did Not Directly Confer A Benefit On Polaris. .............................................. 26

IV.    CERTAIN PLAINTIFFS' FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW. ..................................................................................... 27

## TABLE OF CONTENTS (CONT'D)

**Page**

    A.    The Economic Loss Doctrine Bars Consumer and Common Law Fraud Claims Under Texas and Pennsylvania Law. ....................................................... 27

    B.    Louisiana, Pennsylvania, South Dakota and Texas Do Not Impose A Duty To Disclose Under The Facts Alleged By Plaintiffs.............................................. 30

    C.    Luna And Guthrie Fail To State Consumer And Common Law Fraud Claims Against Polaris.......................................................................................... 32

V.    FOUR OF GUTHRIE'S CLAIMS ARE BARRED BY LOUISIANA LAW................. 33

CONCLUSION.................................................................................................................... 34

## INTRODUCTION

Plaintiffs allege claims on behalf of 14 consumers in 13 states seeking to represent 300,000 Polaris off-road vehicle owners nationwide.  (¶263.)[1]  The Complaint alleges an "Excessive Heat Defect" that "immediately affects all Class Vehicles because it degrades the Class Vehicles' component parts, reduces the Class Vehicles' service life, and makes them vulnerable to catastrophic fires."  (¶1.)  With the exception of plaintiffs Jose Luna's unjust enrichment and warranty claims, Clint Halvorsrod's and Chad Rogers' consumer fraud claims, Les Turgeon's unjust enrichment and consumer fraud claims, and Jimmy Guthrie's redhibition claims, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

*First*, relying on well-settled precedent, this Court previously dismissed the claims of seven plaintiffs—James Bruner, Robert Lenz, Michael Zeeck, Richard Berens, Michael Jacks, Bryan Forrest, and Ed Beattie ("Unaffected Plaintiffs")—because they "do not allege that their vehicles malfunctioned in any way" and thus "have not alleged a particularized or actual injury, which is necessary to establish Article III standing in federal court."  *In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, 364 F. Supp. 3d 976, 983-84 (D. Minn. 2019) ("Opinion").  As the Court made clear, "for the purpose of Article III standing, 'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect;'" rather, "a plaintiff must allege that

---

[1] Paragraph cites refer to plaintiffs' First Amended Complaint ("Complaint") [Dkt. 70]. All emphasis added and internal citations and quotations omitted unless otherwise noted.

the particular product purchased by the plaintiff exhibited the alleged defect." *Id.* at 983 (quoting *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014)).

As in their initial pleading, the Unaffected Plaintiffs do not allege their vehicles "overheated, caught fire, or otherwise failed to perform as intended," and thus have again "failed to allege an injury in fact sufficient to confer Article III standing as to their claims." Opinion at 983. Their claims of "excessive heat" (which is nowhere defined) that can cause "unseen" or "microscopic" degradation (which they do not claim has manifested on their own vehicles) are speculative conclusions that seek to circumvent the Court's Opinion. Likewise, allegations that "Class Vehicle owners and lessees are unable to operate their Class Vehicles without putting themselves ***at risk*** of injury and property damage due to the Excessive Heat Defect, the thermal degradation of component parts that occurs due to the Excessive Heat Defect, and the fire hazard the Excessive Heat Defect" (¶16), do not demonstrate a particularized or actual injury as required for standing.

The law recognizes that all products "degrade" through wear and tear associated with regular and ordinary use, especially those with combustion engines like the vehicles here. Absent facts showing their vehicles caught fire or otherwise malfunctioned, the Unaffected Plaintiffs' claims cannot confer standing without eviscerating Article III as well as the law of warranty, which recognizes that products are warranted for a limited period of time because wear and tear affects their performance. In addition, because six of the Unaffected Plaintiffs are required to plead a manifest defect under applicable state law, and they fail to do so, their claims must be dismissed for this reason as well. To hold otherwise

2

would mean every vehicle manufacturer would be liable for alleged "degradation"—no matter how insignificant—the minute their combustion-engine vehicles were used. The Court should once again dismiss the Unaffected Plaintiffs' claims.

*Second*, all plaintiffs' warranty claims—except for Luna's—fail as a matter of law.[2] Thirteen plaintiffs' express warranty claims and eleven plaintiffs' implied warranty claims do not allege any problem or issue within the warranty period (or fail to allege they provided Polaris the opportunity to provide a warranty-period repair), precluding such claims. And ten plaintiffs' warranty claims are barred because they did not provide Polaris with pre-suit notice. Plaintiffs' claims under the Magnuson-Moss Warranty Act should be dismissed because plaintiffs lack standing to pursue relief on behalf of a nationwide class, and their MMWA claims (except for Luna's) independently fail because their implied warranty claims fail.

*Third*, six plaintiffs' unjust enrichment claims should be dismissed because their respective states require them to directly confer a benefit on defendants. These plaintiffs cannot make this showing where they allege they bought their vehicles from third-party dealers, not Polaris.

*Fourth,* plaintiffs' Pennsylvania and Texas fraud-based claims are barred by the economic loss doctrine, and plaintiffs' Louisiana, Pennsylvania, South Dakota and Texas fraudulent omission claims fail because those states do not recognize a duty to disclose

---

[2]  Polaris moves to dismiss the warranty claims of all plaintiffs except Luna, because he alleges a vehicle fire within the warranty period (¶135) and pre-suit notice (¶344).

3

under the allegations here.   Moreover, Luna's and Guthrie's fraud-based claims fail because they do not allege they reviewed or relied on any representation by, or had any communications with, Polaris.

*Fifth*, the Louisiana Products Liability Act—which provides the exclusive remedy against product manufacturers—bars all but one of Guthrie's claims.

As set forth in Exhibit 1 to the Declaration of R. Allan Pixton,[3] the Court should dismiss with prejudice all claims except for Luna's unjust enrichment and warranty claims, Halvorsrod's and Rogers' consumer fraud claims, Turgeon's unjust enrichment and consumer fraud claims, and Guthrie's redhibition claims.   *See, e.g.*, *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504 (8th Cir. 2009) (affirming dismissal with prejudice after plaintiffs provided opportunity to amend); *U.S. Hotel & Resort Mgmt., Inc. v. Onity, Inc.,* 2014 WL 3748639, at *3 (D. Minn. July 30, 2014) (dismissal with prejudice for lack of standing); *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 856 (D. Minn. 2012) (same).

## STATEMENT OF ALLEGED AND JUDICIALLY NOTICEABLE FACTS

### A.   The Parties.

Polaris designs and manufactures, in part, off-road vehicles sold to end users by independent dealers.   (¶¶22-107.)   Between 2013 and 2018, Polaris and the Consumer Product Safety Commission ("CPSC") announced a number of voluntary recalls covering

---

[3]  Exhibit citations refer to exhibits to the Pixton Declaration.

some putative class vehicles, though the recalls addressed distinct issues and provided different repairs.  (¶¶181-216.)

The plaintiffs and whether they allege their vehicles malfunctioned follow:

| Name | State | Vehicle | Alleges Vehicle Fire? |
|---|---|---|---|
| Berens, Richard | MN | 2017 General 1000 | No |
| Bruner, James | AL | 2017 Ranger XP 900 | No |
| Luna, Jose | CA | 2018 Polaris RZR XP Turbo | Yes |
| Halvorsrod, Clint | FL | 2017 Ranger Highlifter | Yes |
| Lenz, Robert | GA | 2017 RZR Highlifter | No |
| Zeeck, Michael | IL | 2017 RZR XP 1000 | No |
| Guthrie, Jimmy | LA | 2017 Ranger 1000 | Yes |
| Rogers, Chad | MI | 2015 RZR 900 | Yes |
| Jacks, Michael | OH | 2015 Ranger XP 900 | No |
| Elkin, Benjamin | PA | 2016 Ranger XP 900 | Yes |
| Turgeon, Les | SD | 2014 Ranger 570 | Yes |
| Forrest, Bryan | TX | 2015 Ranger 570 | No |
| Rodriguez, Isaac | TX | 2015 RZR 900 | Yes |
| Beattie, Ed | WY | 2016 Ranger XP 900 | No |

Seven plaintiffs—Luna, Halvorsrod, Guthrie, Rogers, Elkin, Turgeon, and Rodriguez—allege an "Excessive Heat Defect" caused fires in their vehicles.  (¶¶30, 36, 54, 60, 78, 84, 96.)  The Unaffected Plaintiffs do not.  Instead, two Unaffected Plaintiffs (Forrest and Beattie) simply allege they felt "excessive heat," (¶¶90, 103) and the rest (Bruner, Lenz, Zeeck, Berens, and Jacks) allege their vehicles "generate[] excessive heat" (¶¶24, 42, 48, 66, 72), without alleging any facts explaining what "excessive" heat is or how it differs from non-"excessive" heat.  No Unaffected Plaintiff claims that his vehicle malfunctioned, that he does not ride his vehicle, that his vehicle has degraded, that the "service life" of his vehicle has decreased, or that his vehicle does not perform as intended.

### B.    Plaintiffs' Vehicles Were Covered by Polaris' Limited Warranty.

Each plaintiff alleges he received a written Polaris Limited Warranty with the purchase of his vehicle and asserts a claim for breach of that express warranty.[4]  (¶¶299, 353, 419, 460, 509, 558, 610, 663, 714, 764, 815, 865, 903.)  For all plaintiffs except Elkin (for whom Polaris could not locate any records), excerpted copies of the Limited Warranty and registration history for plaintiffs' vehicles are collectively attached in Exhibit 2.

---

[4]  The Court may consider the Limited Warranty on which each plaintiff bases his claims, including documents sufficient to show when he purchased his vehicle and when his respective warranty coverage expired.  *See Hatch v. TIG Ins. Co.*, 301 F. 3d 915, 916 n.2 (8th Cir. 2002) (documents are properly considered where complaint "references and relies upon such documents as the basis for [plaintiff's] claims"); *Porous Media Corp. v. Pall Corp.*, 186 F. 3d 1077, 1079 (8th Cir. 1999) (When considering a motion to dismiss, the Court may consider "materials that are necessarily embraced by the pleadings.").

### C.    Plaintiffs' Claims And Alleged Damages.

Plaintiffs bring claims for unjust enrichment, implied and express warranty, fraudulent omission, consumer fraud, and redhibition.  Plaintiffs also allege a nationwide claim under the Magnuson-Moss Warranty Act ("MMWA").  Plaintiffs do not seek damages for physical injury, property damage, or out-of-pocket losses for repairs.  (¶261.) Instead, they allege their vehicles have "diminished" in value and they "would not have purchased the vehicle or would have paid significantly less."  (*E.g.,* ¶¶27, 456, 861.)

### ARGUMENT

To survive dismissal, plaintiffs must allege facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555.  "And legal conclusions couched as factual allegations may be disregarded."  Opinion at 982 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Applying these standards, the Court should dismiss with prejudice plaintiffs' claims as set forth in the motion and Exhibit 1.

### I.    THE UNAFFECTED PLAINTIFFS SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO ALLEGE A MANIFEST DEFECT.

The claims of the Unaffected Plaintiffs should again be dismissed for lack of standing.  "As a jurisdictional prerequisite, standing must be established before reaching the merits of a lawsuit … and a federal district court must dismiss any aspect of a lawsuit over which it lacks subject-matter jurisdiction."  Opinion at 982 (*citing City of Clarkson*

*Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)).  "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Because the seven Unaffected Plaintiffs do not allege facts showing they have suffered any injury in fact, their claims fail.  Additionally, the failure of six Unaffected Plaintiffs to allege a manifest defect dooms their claims under state law.

### A.     Seven Unaffected Plaintiffs Lack Article III Standing To Assert Claims.

Attempting to end-run the Court's Opinion, the Unaffected Plaintiffs relabel their purported "Engine Overheat/Fire Defect" as an "Excessive Heat Defect" that "affects All Class Vehicles because it degrades [their] component parts, reduces the[ir] service life,[5] and makes them vulnerable to catastrophic fires."  (¶1.)  But plaintiffs must do more than merely assert the existence of a "defect"—a legal conclusion—they must plead claims "supported by factual allegations" sufficient to render them plausible.  *Iqbal,* 556 U.S. at 679.  As this Court held, plaintiffs must allege facts showing that "the particular product purchased by the plaintiff exhibited the alleged defect."  Opinion at 983.  The Unaffected Plaintiffs fail to do so here.

First, as in their initial complaint, the Unaffected Plaintiffs "do not allege that their vehicles malfunctioned in any way. There are no allegations that their vehicles ever overheated, caught fire, or otherwise failed to perform as intended."  Opinion at 983.  Nor

---

[5] Plaintiffs do not define "service life" or allege what this would be for the class vehicles. Nor do they attempt to differentiate it from warranty coverage.

do they allege that they do not or cannot ride their vehicles because of the alleged defect. For these reasons alone, the Unaffected Plaintiffs "have failed to allege an injury in fact sufficient to confer Article III standing as to their claims." *Id.*

Second, the Unaffected Plaintiffs do not attempt to identify what constitutes "excessive heat" in a combustion engine that, by definition, generates heat. Plaintiffs do not allege or describe any point or temperature at which exhaust heat is "excessive" or how allegedly "excessive" exhaust heat in their vehicles differs from exhaust heat that is not "excessive." (¶14 (admitting "engines and exhaust systems in *all* [off-road vehicles] typically generate high temperatures").) Adding "excessive heat" to the word "defect" adds nothing and does not transform a naked conclusion into a factual allegation. *See, e.g.*, *Twombly*, 550 U.S. at 545 ("a plaintiff's obligation ... requires more than labels and conclusions"); *Acevedo v. Ross*, 2019 WL 343246, at *4 (E.D.N.Y. Jan. 28, 2019) (dismissing bare allegations of "excessive" force as "merely a 'label and conclusion'"); *Alas v. AT&T Inc.*, 2018 WL 6133648, at *5 (C.D. Cal. Oct. 29, 2018) ("the bare allegation that the transaction fees were excessive is akin to a label or conclusion"); *McCauley v. Shaw*, 2017 WL 769908, at *2 n.2 (E.D. Mo. Feb. 28, 2017) (general allegations of "excessive" force do not satisfy *Iqbal*); *Bourne v. Stewart Title Guar. Co.*, 2011 WL 635304, at *5 (D.N.H. Feb. 16, 2011) (dismissing claims of "excessive" interest fees unsupported by facts).

Although plaintiffs claim to have "conducted heat testing on a sample of three Polaris vehicles," they did not test any of their own vehicles, nor even the same model

9

vehicles.  (¶158.)  Thus, even putting aside that the Unaffected Plaintiffs do not allege their vehicles malfunctioned or do not operate as intended, the Complaint is devoid of factual allegations showing how or why any heat generated by *their* vehicles is "excessive," a subjective term that does not identify a defect.  *Wallace*, 747 F. 3d at 1030 ("The Supreme Court has made it clear that standing must be particularized, meaning the alleged 'injury must affect the plaintiff in a personal and individual way.'"); Opinion at 983 ("[T]o assert claims as a class representative in a putative class action lawsuit, the class representative must have standing to assert his or her own claims.") (*citing In re Milk Prods. Antitrust Litig.,* 195 F. 3d 430, 436 (8th Cir. 1999)).

Third, while the Complaint alleges generally that the "Excessive Heat Defect" "degrades the Class Vehicles' component parts" (¶1), the Unaffected Plaintiffs do not claim, much less assert facts to show, their own vehicles have degraded.  Nor do they explain how any purported "thermal degradation" differs from the normal wear and tear that occurs in any vehicle or other product with a combustion engine, or how the additional degradation could even be identified.  *See, e.g., Glass v. Allis-Chalmers Corp.*, 618 F. Supp. 314, 316 (E.D. Mo. 1985) ("[I]t is clear that as time goes by and a product is used, it or its parts may simply wear out.  To hold the manufacturer or seller liable for … ordinary wear and tear would be to place the manufacturer or seller in the place of an insurer."), *aff'd*, 789 F. 2d 612 (8th Cir. 1986); *see also, e.g.,* Ex. 2 at 5, 16, 21, 26, 33, 39, 44, 49, 53,

10

60, 65, 72, 77 (excluding "normal wear and tear" from Polaris' Express Warranty)."[6] Indeed, the very treatise plaintiffs rely upon (¶165) explains that "exposure to heat will reduce component life due to negative effect of heat on material properties," and "***all materials are expected to experience some level of thermal degradation***." (Ex. 3, Alaa El-Sharkawy, Transient Modeling of Vehicle Under-hood and Underbody Component Temperatures, 9 SAE Int'l J. Material Mfg. 330 (May 2016).[7] In the absence of any factual allegation that their own vehicles have "degraded" or how any purported degradation attributable to the alleged defect can be measured or identified, plaintiffs provide no more than "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Fourth, plaintiffs again rely on allegations concerning a "risk" of fire, injury and property damage: "Class Vehicle owners and lessees are unable to operate their Class Vehicles ***without putting themselves at risk*** of injury and property damage due to the Excessive Heat Defect...." (¶16; *see id.* ¶¶8, 10, 27, 90, 215.) But as this Court held in

---

[6] In Minnesota, wear and tear must be considered when a manufacturing defect is alleged. *See, e.g., Beckel v. Alexander*, 271 Minn. 14, 20 (1965) (affirming judgment because "it is equally as probable that the top rung of the ladder collapsed and plaintiff fell because it was not strong enough to support the weight of plaintiff and his load or due to a weakening developed from the wear and tear of prior use as it is that it collapsed because of a defect in construction of the top rung."); *Bach v. Unisys Corp.*, 1996 WL 146433, at *4 (Minn. Ct. App. Apr. 2, 1996) (affirming refusal to instruct on res ipsa loquitur where "it is difficult to assume that there could not have been some normal wear and tear, normal deterioration, or normal obsolescence that could have contributed to slippage or an improvident movement of the plunger blade.").

[7] Because plaintiffs rely on this article to support their claims (*see* ¶165 n.54), the Court can consider it in deciding this motion. *See* n.4, *supra*.

dismissing these very claims brought by the Unaffected Plaintiffs, "[a]llegations that a product line contains a defect or that a product poses a risk of exhibiting a defect are insufficient," and the "allegation that the *risk* of a possible future malfunction exists [also] is insufficient."  Opinion at 983 n.2 (emphasis in original).

### B.  The Unaffected Plaintiffs' Claims Fail Under Well-Settled Precedent.

Courts in this Circuit consistently reject product defect claims indistinguishable from those asserted by the Unaffected Plaintiffs.  In *Wallace v. ConAgra Foods*, for example, plaintiffs alleged the defendant sold meat advertised as "100% kosher" that was not.  747 F.3d at 1027.  Defendant's kosher inspection process was purportedly "defective and unreliable" because some non-kosher meat was used.  *Id.* at 1028.  Like the Unaffected Plaintiffs' allegations of "microscopic" and "unseen" thermal damage here, the *Wallace* plaintiffs admitted that "it is impossible for any reasonable consumer to detect whether purportedly kosher meat is non-kosher." *Id.* at 1030.  The Eighth Circuit held that plaintiffs lacked standing to assert their claims because their "allegations fail to show that any of the particular packages of Hebrew National beef they personally purchased contained non-kosher beef." *Id.* at 1030.  Like the Unaffected Plaintiffs here, "[w]ithout any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue." *Id.*

In *Thunander v. Uponor*, plaintiffs alleged they purchased homes with defective plumbing that failed to meet toxicity requirements for potable water use.  887 F. Supp. 2d at 857.  As with the Unaffected Plaintiffs here, the *Thunander* plaintiffs alleged that the

defendant's pipe was defective but "do not allege that their own pipes have been tested and demonstrate toxicity or lack of compliance with the [toxicity] standards." *Id.* at 862. The Court dismissed plaintiffs' claims with prejudice for lack of standing, holding that "plaintiffs have not conducted any testing on *their* pipes to determine whether they exhibit the alleged defect." *Id.* at 865-65; *see also id.* at 873, 876-77.

Similarly, in *George v. Uponor*, plaintiffs claimed that plumbing components were defective and caused "dezincification," a "form of chemical corrosion in which zinc leaches out" of the components "upon exposure to water, the very liquid plumbing systems are designed to convey." 988 F. Supp. 2d 1056, 1060 (D. Minn. 2013). The Court found, however, that all but three plaintiffs failed to "allege that they personally have experienced dezincification or any other manifestation of a defect" and dismissed their claims: "[p]ut in its simplest terms, without suffering from dezincification, these plaintiffs cannot pursue damages for leaky pipes or other harms caused by dezincification." *Id.* at 1070.[8]

Likewise, in *Browe v. Evenflo Co., Inc.*, plaintiff claimed the defendant's car seat contained a "defective harness buckle subject to recall." 2015 WL 3915868, at *1 (D. Minn. June 25, 2015). The complaint alleged that "[s]hortly after purchasing the seat, [plaintiff] noticed that the buckle was becoming more difficult to unlatch"; "the release

---

[8]  *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F. 3d 604 (8th Cir. 2011), provides no support for the Unaffected Plaintiffs. Unlike the *Zurn* plaintiffs, whose claim that the alleged defect "afflicts all of the [plumbing] fittings upon use" and "is already manifest in all [plumbing] systems" was "supported . . . with expert testimony," *id.* at 617, the Unaffected Plaintiffs make no such claim and, indeed, do not allege their own vehicles malfunctioned.

mechanism became significantly more difficult to operate" and she broke "her fingernails at least twice while unlatching the buckle"; and she "eventually removed the seat from her vehicle and placed it in her husband's car so it would be used less frequently." *Id.* ¶ 48. The Court dismissed plaintiff's warranty claims, holding that she "failed to allege that she suffered a sufficient physical or pecuniary injury to sustain her merchantability claim." *Id.* at *4. Specifically, "Browe does not allege that the defect caused her to cut the seat's nylon straps or otherwise render the seat unusable." *Id.* The Court also underscored plaintiff's admission that "her family continues to transport their child in the seat that has the allegedly defective safety component." *Id.*[9] The decision goes on to hold:

> The Court is especially troubled by this last uncontested fact. It is a difficult proposition to accept that the lead plaintiff in a products liability lawsuit seeking class action status can credibly pursue liability while continuing to use the very same product the lawsuit claims is dangerously defective and warrants a pecuniary remedy.

*Id.* at 4; *see, also, e.g., Onity*, 2014 WL 3748639 at *3 (dismissing claims because, "even assuming that the lock mechanism is presently defective for purposes of products liability law—despite the fact that it still performs the functions of locking the door upon closing it and unlocking it upon insertion of a properly-coded key card—no present injury has occurred, other than the costs plaintiffs have incurred to remedy the defect.").

So too with the Unaffected Plaintiffs here who allege no facts showing their own vehicles malfunctioned or generate heat that renders them unusable or defective. The Court

---

[9] Plaintiff's remaining claims were dismissed on other grounds. 2015 WL 3915868, at *6.

should dismiss their claims for lack of standing, as recognizing such allegations would eviscerate the particularized injury requirements of Article III and this Circuit's settled law.

**C.    Six Unaffected Plaintiffs' Claims Also Fail Under State Law Because They Allege No Manifest Defect.**

As this Court has instructed, the "injury in fact" requirement for Article III standing is distinct from the "damages" component of claims brought under state law. Opinion at 984; *see also Onity*, 2014 WL 3748639 at *3 ("The concepts of defect and whether that defect has manifested itself to cause damages so as to support an actionable injury are relevant to the issue of liability under the substantive law of products liability."). Where, as here, the Unaffected Plaintiffs cannot establish an actual and particularized injury for purposes of standing, they cannot demonstrate a manifest defect required to show any injury or damages under state law.

"Under Eighth Circuit authority, '[c]ourts have been particularly vigilant in requiring allegations of injury or damages in products liability cases.' … Specifically, in such cases, a plaintiff must allege a manifest defect." *Thunander*, 887 F. Supp. 2d at 861 (quoting *Briehl v. GM Corp.*, 172 F. 3d 623, 627 (8th Cir. 1999)); *O'Neil*, 574 F. 3d at 503 (same; affirming dismissal of analogous class action under Minnesota law for damages arising from CPSC-recalled consumer products, finding lack of a manifest defect "fatal to their case").

Numerous decisions have applied this principle to dismiss claims—whether under fraud, consumer fraud, warranty, or other state laws—against vehicle manufacturers where a defect did not manifest in the plaintiff's vehicle, causing injury or damage. *E.g.*,

15

*Briehl*, 172 F. 3d at 628 ("Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies."); *In re Bridgestone/Firestone, Inc.*, 288 F. 3d 1012, 1017 (7th Cir. 2002) (rejecting "theory that selling products with undisclosed attributes, and thus worth less than represented"); *Miller v. GM LLC*, 2018 WL 2740240 (E.D. Mich. June 7, 2018) (dismissing warranty, consumer fraud, fraudulent omission and unjust enrichment claims, in part because plaintiffs who did not allege their vehicles "malfunctioned in any way" and who did not allege the "defect ever manifested itself in their vehicles" had not sufficiently stated their claims); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing fraud, misrepresentation, and warranty claims where defect in child seat did not manifest in plaintiff's vehicle); *Hubbard v. GM Corp.*, 1996 WL 274018, at *3-4 (S.D.N.Y. May 22, 1996) (plaintiff could not recover for defective braking system without manifest defect); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 602 (S.D.N.Y. 1982) (owners of tires that performed satisfactorily had not suffered damage to support a claim, even though others' tires failed); *see also Brooks v. Remington Arms Co.*, 2010 WL 6971894 at *4 (W.D. Ark. Oct. 27, 2010) (dismissing without leave to amend and noting "[t]he striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it").

Plaintiffs cannot circumvent the manifest defect requirement by alleging they were injured by overpaying for their vehicles or that their vehicles have diminished in value. In

*O'Neil*, for example, plaintiffs insisted that "they [had] not received the benefit of the bargain: they paid for a drop-side [baby] crib and now they do not use the crib because the drop-side is not safe," and sought to recover the difference in value between a crib with a functional drop-side and a crib without one.  574 F. 3d at 504.  The Eighth Circuit rejected this argument, holding that where plaintiffs' "crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain."  *Id.*; *see also Bridgestone/Firestone*, 288 F. 3d at 1017 ("If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation.").

Likewise, in *Carlson v. General Motors*, the Fourth Circuit rejected plaintiffs' claim of injuries from the diminished resale value of their vehicles equipped with allegedly defective diesel engines or by the vehicles' allegedly "poor reputation."  883 F. 2d 287, 289, 297-98 (4th Cir. 1989) ("[I]mplied warranty of merchantability clearly does not encompass consumer expectations that a product will hold its value; and it is for this reason that several courts have rejected claims similar to those pressed here."); *accord Briehl*, 172 F. 3d at 629 (finding insufficient as a matter of law allegations of "loss in resale value").

Here, Berens, Bruner, Lenz, Jacks, Forrest, and Beattie do not allege a defect manifested in their vehicles causing them to malfunction.  Under the law of their states,[10] they do not have valid claims.  Accordingly, their claims should be dismissed.

---

[10]  *E.g.,* (**Minn.**) *Carey v. Select Comfort Corp.*, 2006 WL 871619, at *2-3 (Minn. Dist. Ct. Jan. 30, 2006) ("[D]iminished value premised on the possibility of future product failure is insufficient to support a claim for relief."); (**Ala.**) *Ford Motor Co. v. Rice*, 726 So. 2d 626, 628-629 (Ala. 1998) ("[P]urchasers of an allegedly defective product have no legally

## II.    THE MAJORITY OF PLAINTIFFS' WARRANTY AND MAGNUSON-MOSS CLAIMS FAIL AS A MATTER OF LAW.

This Court dismissed Halvorsrod's and Rogers' warranty claims because they did not allege pre-suit notice as required by state law.  Opinion at 985.  The Court rejected their contention that pre-suit notice was satisfied because Polaris allegedly had knowledge of a defect through other customers' complaints and its internal knowledge of purported defects.  *Id.*  Because Berens, Bruner, Zeeck, Lenz, Jacks, Elkin, Turgeon, and Forrest

---

recognizable claim where the alleged defect has not manifested itself in the product they own" and "'[w]here … a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies.'"); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) ("Farsian's concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law."); (**Ga.**) *Tiismann v. Linda Martin Homes Corp.*, 610 S.E. 2d 68, 70 (Ga. 2005) ("[E]ven an award for general damages under the FBPA is limited to those damages that can be measured 'actual injury suffered.'"); *Weidman v. Ford Motor Co.*, 2019 WL 3003693, at *4–5 (E.D. Mich. July 10, 2019) (dismissing implied warranty claim where plaintiff failed to allege "the vehicle was inoperable or unusable."); (**Ohio**) *Felix v. Ganley Chevrolet, Inc.*, 49 N.E. 3d 1224, 1231-1232 (Ohio 2015) ("[T]he OCSPA limited the damages available in class actions to actual damages" and "[p]roof of actual damages is required before a court may properly certify a class action"; this requirement is "consistent with the majority of decisions by other states' appellate courts, which also hold that plaintiffs who bring private causes of action under their states' consumer-protection statutes are required to plead and prove actual damages or injury."); *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005) (no "injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property."); (**Tex.**) *Everett v. TK-Taito, L.L.C.*, 178 S.W. 3d 844, 861 (Tex. App. 2005) (rejecting claims where seat belt buckles had not malfunctioned); *Polaris Indus. Inc. v. McDonald*, 119 S.W. 3d 331, 340 (Tex. App. 2003) (dismissing where plaintiff "sustained no injury due to its alleged defects"); *DaimlerChrysler Corp. v. Inman*, 252 S.W. 3d 299, 303-07 (Tex. 2008) (same); (**Wyo.**) Wyo. Stat. Ann. §40-12-108 (limiting consumers to "an action under this act for the damages he has actually suffered"); *see also Broderick v. Dairyland Ins. Co.*, 270 P. 3d 684, 692 (Wyo. 2012) (explaining availability of "remedies in limited circumstances").

likewise fail to allege pre-suit notice, their warranty claims fail under their states' law. Despite leave to amend, plaintiffs did nothing to cure, relying again on allegations of constructive notice through other consumer complaints and internal knowledge.  (*E.g.*, ¶280.)  Such "general notice" allegations are insufficient as a matter of law.  Opinion at 985.[11]  Accordingly, the Court should dismiss with prejudice all plaintiffs' UCC-based[12] warranty claims except Rodriguez's (who alleges pre-suit notice).  Furthermore, most plaintiffs' express and implied warranty claims are barred by Polaris' Limited Warranty. "And because an MMWA claim requires an underlying state-law breach-of-warranty claim," Opinion at 985, the Court should dismiss plaintiffs' MMWA claims with prejudice.

---

[11]  *E.g.*, (**Minn.**) *Drobnak v. Andersen Corp.*, 561 F. 3d 778, 785-86 (8th Cir. 2009) (affirming dismissal of claims based "solely on [other consumers'] notice and lawsuits"); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 827 (D. Minn. 2010) (dismissing claims where plaintiffs failed to allege pre-suit notice); (**Ala.**) *Hobbs v. GM Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) (same); *Smith v. Apple, Inc.*, 2009 WL 3958096, at *1-2 (N.D. Ala. Nov. 4, 2009) (same); (**Fla.**) Opinion at 985 (same); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (same); (**Ga.**) *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 225-26 (S.D.N.Y. 2015) (same); *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *15 (D. N.J. Jan. 24, 2014) (same); (**Ill.**) *Connick v. Suzuki Motor Co.*, 675 N.E. 2d 584, 590 (Ill. 1996) (same); (**Mich.**); Opinion at 985 (same); *Johnston v. PhD Fitness, LLC*, 2018 WL 646683, at *3-4 (E.D. Mich. Jan. 31, 2018) (same); (**Ohio**) *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) (same); (**Pa.**) *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013) (same); (**S.D.**) *Brookings Mun. Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1177 (D.S.D. 2000) (same); (**Tex.**) *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 970-71 (S.D. Tex. 2016) (same); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (same); (**Wyo.**) *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P. 2d 589, 591 (Wyo. 1984) (same).

[12]  Turgeon alleges warranty claims under Pennsylvania law (¶¶812-31), but such claims fail as a matter of law because Turgeon purchased his vehicle in South Dakota and alleges no connection to Pennsylvania.

**A.     Eleven Plaintiffs' UCC Warranty Claims Are Barred Because They Do Not Allege Pre-Suit Notice.**

Twelve plaintiffs assert express and/or implied warranty claims under the UCC, all of which—with the exception of Rodriguez's—fail because they did not "provide pre-suit notice to defendants, as is required by their states' law."  Opinion at 984; *see also* Minn. Stat. Ann. §336.2-607(3)(a) ("Where a tender has been accepted . . . the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;"); Ala. Code §2-607(3)(a);[13] Fla. Stat. Ann. §672.607(3)(a); Ga. Code Ann. §11-2-607(3)(a); 810 ILCS §5/2-607(3)(a); Mich. Comp. Laws §440.2607(3)(a); Ohio Rev. Code Ann. §1302.65(C)(1); 13 Pa. Cons. Stat. Ann. §2607(c)(1); S.D. Codified Laws §57A-2-607(3)(a); Tex. Bus. & Comm. Code Ann. §2.607(c)(1); Wyo. Stat. Ann. §34.1-2-607(c)(i).

**B.     Thirteen Plaintiffs' Express Warranty Claims Are Barred By Polaris' Limited Warranty.**

All plaintiffs assert express warranty claims based on Polaris' Limited Warranty, which plaintiffs allege is "substantially identical for all models" and provides that for a period of six months, Polaris will cover the cost of repair or replacement for all components of the covered vehicle. (*E.g.*, ¶276.) Eleven plaintiffs' claims should be dismissed because they do not allege that a problem occurred during the warranty period, and all but Luna

---

[13]   Bruner's failure to provide Polaris pre-suit notice also precludes his consumer fraud claim.  *See* Ala. Code §8-19-10; ¶¶217-227; *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399–400 (N.D. Ala. 1997) ("[F]ailure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to [plaintiff's] claim.").

should be dismissed because they do not allege they gave Polaris the opportunity to address the purported issue within the warranty period and that Polaris refused to do so.

"The general rule is that an express warranty has no affect after the applicable time period has elapsed." *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011); *Abraham v. Volkswagen of Am., Inc.,* 795 F. 2d 238, 241 (2d Cir. 1986) ("express warranties in this case do not cover automobile defects manifesting themselves after expiration of the time/mileage limits of the relevant warranties").  Courts across the country enforce this rule, holding that plaintiffs must allege a breach occurred within the warranty period.[14]  Only three plaintiffs—Luna, Halvorsrod, and Rogers—allege any breach or malfunction *during* the warranty period.  (¶¶29-30, 35-36, 59-60.)  The remaining plaintiffs do not allege warranty-period problems, requiring dismissal of their claims.[15]

Additionally, the express warranty claims of all plaintiffs except Luna fail because they did not allege they presented their vehicles to Polaris for repair within the warranty period and that Polaris failed to do so.  *See, e.g., Miller*, 2018 WL 2740240, at *7

---

[14]  *See, e.g., In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 879 (E.D. Mich. 2009); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013); *Osness v. Lasko Prod., Inc.*, 868 F. Supp. 2d 402, 411 (E.D. Pa. 2012) (dismissing express warranty claim where plaintiff failed to allege product "malfunctioned or that she otherwise discovered a defect in [the product] within the two-year warranty period"); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013); *Sonner v. Mullinax Ford North Canton, Inc.*, 2000 WL 700313, *2 (Ohio App. May 22, 2000); *Mountain Fuel Supply Co. v. Cent. Eng'g & Equip. Co.*, 611 P. 2d 863, 872 (Wyo. 1980); *Tokar v. Crestwood Imports, Inc.*, 532 N.E. 2d 382, 388-389 (Ill. App. 1988).

[15]  Elkin alleges a fire but not whether it occurred within the warranty period.  (¶¶77-78.)

21

(dismissing express warranty claims under Michigan, Illinois, and other states' law because "[p]laintiffs have not pled facts demonstrating that the alleged defects became apparent during the warranty period, that they presented their vehicles for repair, or that [vehicle manufacturer] was unwilling or unable to repair their vehicles").   Moreover, they cannot avoid dismissal by alleging in conclusory fashion that Polaris' Limited Warranty is invalid because it purportedly fails in its essential purpose.  Except for Wyoming and Louisiana,[16] plaintiffs can assert that a warranty fails in its essential purpose *only* if they give the manufacturer or seller an opportunity—often multiple opportunities—to correct the purported issue.[17]  Plaintiffs allege Polaris issued recall campaigns (*e.g.,* ¶¶192, 197, 201-

---

[16] Polaris located no authority indicating these states recognize the essential purpose exception.

[17]  *E.g.*, (**Minn.**) *Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1189 (D. Minn. 2001) (warranty did not fail where plaintiff "never made a claim on the warranty"); (**Ala.**) *Ag-Chem Equip. Co. v. Limestone Farmers Co-Op., Inc.*, 567 So. 2d 250, 252 (Ala. 1990) (warranty did not fail in essential purpose where defendant was not given "the opportunity to rebuild the engine in accordance with the warranty"); (**Fla.**) *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309,1319 n.11 (S.D. Fla. 2009) ("'[E]ssential purposes' exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use."); (**Ga.**) *Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *8 (N.D. Ga. Mar. 23, 2016) ("Georgia courts have required a showing of multiple attempts to repair a defect in order to sustain a breach of warranty."); (**Mich.**) *Zanger v. Gulf Stream Coach, Inc.*, 2005 WL 3163392, at *5 (E.D. Mich. Nov. 28, 2005) (assessing reasonableness of repair based on "numerous, individual repairs"); *TIBCO Software, Inc. v. Gordon Food Serv., Inc.*, 2003 WL 21683850, at *6 (W.D. Mich. July 3, 2003) (warranty did not fail in essential purpose where plaintiff "did not make a warranty claim within the ninety-day period"); (**Ohio**) *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 56, (1989) ("It would be unreasonable as a matter of law to conclude that the remedy failed of its essential purpose" without evidence defendant was unable or unwilling to replace or repair the problem.); (**Ill. and Pa.**) *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *2-3 (E.D. Mich. Jan. 4, 2019) (dismissing warranty claims for failure to plead plaintiffs presented vehicles to Ford to have allegedly

22

03, 207-209). But besides Luna (¶¶344-45), plaintiffs do not allege they gave Polaris an opportunity to perform the recall and/or other repairs, and thus cannot show a breach occurred, or that the warranties failed in their essential purpose. Accordingly, all express warranty claims (except Luna's) should be dismissed.

### C. Ten Plaintiffs' Implied Warranty Claims Are Barred By Polaris' Limited Warranty.

Ten plaintiffs' implied warranty claims must be dismissed under the terms of Polaris' Limited Warranty. Their states permit a seller to modify an implied warranty provided the written modification is conspicuous. *E.g.,* Minn. Stat. Ann. §336.2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous ...").[18] The MMWA likewise permits limitations on an implied warranty so long as it is for a reasonable period of time and "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. §2308(b).

---

defective part replaced); **(S.D.)** *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776 (N.D. Cal. 2017) (dismissing express warranty claims under South Dakota and other states for failure to allege consumers provided manufacturer adequate opportunities to remedy); **(Tex.)** *Ross Neely Sys., Inc. v. Navistar, Inc.*, 2015 WL 12939110, at *2 (N.D. Tex. May 28, 2015) (plaintiff must "allege that [defendant] willfully failed or refused to make repairs"; alleging defendant "could not 'fix' the underlying design defect" is insufficient).

[18]  *See also* Ala. Code §7-2-316(2); Ga. Code Ann. §11-2-316(2); Mich. Comp. Laws §440.2316(2); Ohio Rev. Code Ann. §1302.29(B); 13 Pa. Stat. and Cons. Stat. Ann. §2316(2); S.D. Codified Laws §57A-2-316(2); Tex. Bus. & Comm. Code Ann. §2.316(b); Wyo. Stat. Ann. §34.1-2-316(b).

Polaris' Limited Warranty explicitly limits any implied warranty to the duration of the six-month warranty period, and does so using all-capitalized words:

> THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE IS EXCLUDED FROM THIS LIMITED WARRANTY. ALL OTHER IMPLIED WARRANTIES (INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MERCHANTABILITY) ARE LIMITED IN DURATION TO THE ABOVE SIX MONTH WARRANTY PERIOD.

(Ex. 2 at 6, 17, 22, 27, 34, 40, 45, 50, 54, 61, 66.)  Plaintiffs do not allege the limitations to Polaris' Limited Warranty are not conspicuously stated in their owners' manuals.  Two conclusions follow:

*First*, Polaris' limitation on the implied warranty of merchantability is enforceable under state law and MMWA—it is written, conspicuous, and of a reasonable duration.  *See, e.g. Vartek, LLC v. Axiall, LLC,* 2019 WL 1316415, at *4 (W.D. Pa. Mar. 22, 2019) (dismissing Pennsylvania implied warranty claim because disclaimer in all capitalized letters was conspicuous as a matter of law); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *4-5 (N.D. Cal. Mar. 12, 2014) (dismissing Ohio and Texas implied warranty claims where vehicle sold with written limited warranty); *Hamilton v. Cross Country Chrysler Plymouth, Inc.*, 1979 WL 208771, at *4-5 (Ohio App. Nov. 14, 1979) (affirming dismissal of implied warranty claims based on express disclaimer); *M.J. Bradley Co. v. Gen. Polymers Corp.*, 1994 WL 594156, at *2-3 (E.D. Pa. Oct. 28, 1994) (finding limitation on implied warranty printed in all-capital letters conspicuous under Ohio law).

*Second*, because Polaris' Limited Warranty is effective, plaintiffs who do not allege a problem during the implied warranty period fail to state a claim.  By the plain terms of

24

Polaris' Limited Warranty, all applicable implied warranties, including the implied warranty of merchantability, "are limited in duration to the above six month warranty period." (Ex. 2 at 6, 17, 22, 27, 34, 40, 45, 50, 54, 61, 66, 73.) Because only Luna alleges to have had, or to have reported to a dealership, any issues with his vehicle within the warranty period, the implied warranty claims of the remaining plaintiffs must be dismissed. *See, e.g., Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434-35 (11th Cir. 2009) (affirming dismissal of implied warranty claim where "plaintiffs failed to allege that a defect manifested itself or a breach occurred within" the applicable warranty period).[19]

### D.   Plaintiffs' Magnuson-Moss Claims Should Be Dismissed.

As the Court found with Halvorsrod and Rogers, because all plaintiffs' (except for Luna's) warranty claims fail, so too do their MMWA claims fail. *See* Opinion at 985 (citing *Sipe v. Workhorse Custom Chassi*s, LLC, 572 F. 3d 525, 530 (8th Cir. 2009)); *see also, e.g., Browe*, 2015 WL 3915868, at *5 (same); *Chin v. Gen. Mills, Inc.*, 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (same).[20]

Furthermore, plaintiffs lack standing to pursue relief on behalf of a nationwide MMWA class. *See Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224,

---

[19]  Bruner's implied warranty claims should be dismissed for the additional reason that he he purchased his vehicle from a dealer and thus he is not in privity with Polaris. *See Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1087 (Ala. 2003) (finding implied warranty claim "not available against a manufacturer who was not involved in the transaction pursuant to which the complaining party purchased the product.").

[20]  Jacks cannot maintain an MMWA claim. *Sloan v. GM LLC*, 287 F. Supp. 3d 840, 882 (N.D. Cal. 2018) (dismissing MMWA claim based on Ohio implied warranty in tort claim).

at *11 (D. Minn. Mar. 11, 2014) (no "standing to assert any of the state law claims" where plaintiff could not allege it "suffered injury in any other state").  A nationwide claim under the MMWA requires allegations that Polaris violated the underlying warranty laws of all 50 states.  But plaintiffs fail to identify plaintiffs for 37 of 50 states or Washington, D.C.  As a result, their nationwide claim must be dismissed.  *See Hindsman v. GM LLC,* 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018) (dismissing nationwide MMWA claim because plaintiffs lacked standing to represent others states' consumers); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (same); *see also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (same); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) (same).

## III.   THE UNJUST ENRICHMENT CLAIMS OF SEVERAL PLAINTIFFS FAIL.

### A.   Certain Unjust Enrichment Claims Fail Because Plaintiffs Did Not Directly Confer A Benefit On Polaris.

The Court previously dismissed the unjust enrichment claims of Halvorsrod and Rogers because they—like Jacks, Elkin, Forrest, and Rodriguez—did not buy their vehicles from Polaris, but instead purchased them from independent dealerships (¶¶23, 29, 35, 41, 47, 53, 59, 65, 71, 77, 83, 89, 95, 102), and their states' laws require that a plaintiff *directly* confer a benefit on the defendant to state an unjust enrichment claim.[21]   Opinion at 987.

---

[21] *E.g.*, (**Fla.**) Opinion at 986; *Extraordinary Title Servs. v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. App. 2009) (affirming dismissal: "Plaintiff cannot allege nor establish that it conferred a direct benefit upon [defendant]"); (**Mich.**) Opinion at 987; *Storey v. Attends Healthcare Prod., Inc.*, 2016 WL 3125210, at *12-13 (E.D. Mich. June 3, 2016) (affirming dismissal because plaintiffs "have not alleged that they directly conferred

Polaris is a remote manufacturer and these plaintiffs do not allege they purchased from or made any payment directly to Polaris; instead, they paid independent dealers.  Thus, the unjust enrichment claims of the Florida, Michigan, Ohio, Pennsylvania, and Texas plaintiffs should be dismissed with prejudice.

## IV.   CERTAIN PLAINTIFFS' FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW.[22]

### A.   The Economic Loss Doctrine Bars Consumer and Common Law Fraud Claims Under Texas and Pennsylvania Law.

The Court previously held that the economic loss doctrine bars the consumer fraud and fraudulent omission claims of the Florida and Michigan plaintiffs.  Opinion at 989.  Likewise, the Court should dismiss the Texas and Pennsylvania consumer fraud and fraudulent omission claims as they too are barred by the economic loss doctrine.

---

a benefit on Defendant" in a case involving "consumer plaintiffs and a remote manufacturer"); (**Ohio**) *In re Whirlpool Corp.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) (manufacturer had not been unjustly enriched under Ohio law because plaintiff purchased product from authorized retailer); (**Pa.**) *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721-22 (E.D. Pa. 2013) (dismissing unjust enrichment claims against vehicle manufacturer because "[t]he 'benefit' must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim"); (**Tex.**) *In re Ford Motor Co. E-350 Van Prod. Liab. Litig.* 2011 WL 601279, at *10 (D.N.J. Feb. 16, 2011) (dismissing claim under Texas law because plaintiff purchased at dealership).

[22]   Additionally, plaintiffs' Alabama, Georgia, Louisiana, and Ohio consumer fraud class claims must be dismissed because those states expressly prohibit class claims by private consumers.   *See* Ala. Code §8-10-10(f); Ga. Code Ann. §10-1-399; La. Rev. Stat. §51:1409(A); ORC §1345.09(B); *Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (dismissing Alabama and Georgia class claims); *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 748 (N.D. Ohio 2010) (dismissing Ohio class claims); *Grant v. Houser*, 2010 WL 3303853, at *6 (E.D. La. Aug. 17, 2010) (dismissing Louisiana class claims).

In Texas, the economic loss rule bars all fraud claims other than fraud in the inducement. *Heil Co. v. Polar Corp.*, 191 S.W. 3d 805, 816 (Tex. App. 2006) (economic loss doctrine applied where plaintiff asserted a claim "for 'fraud,' not fraudulent inducement."); *see also*, *e.g., Mays v. Pierce*, 203 S.W. 3d 564, 573 n.15 (Tex. App. 2006) ("[W]e conclude the *Formosa* court's rejection of the independent injury rule is limited to fraudulent inducement claims and does not extend to fraud generally."); *Hameed Agencies (pvt) Ltd. v. J.C. Penney Purchasing Corp.*, 2007 WL 431339, at *5 (Tex. App. Feb. 8, 2007); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, 2010 WL 1996596, at *7 n.8 (S.D. Tex. May 17, 2010).

In addition, "[t]he Texas Supreme Court has extended the principles underlying the economic loss rule to DTPA claims under the 'mere breach of contract' defense. ... Like the economic loss doctrine, the mere breach of contract defense 'is based upon the general proposition that, when the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone.'" *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015). Plaintiffs here allege only economic losses based on the purchase of a vehicle subject to a warranty. As in *BCC Merchant Solutions*, plaintiffs' claimed economic losses stem not from the alleged misrepresentation or omissions, but from failure to perform contractual obligations and therefore are "'governed by contract law, not the DTPA.'" *Id.* at 470 (*citing Crawford v. Ace Sign, Inc.*, 917 S.W. 2d 12, 14 (Tex. 1996)); *see also Polley v. Odom*, 957 S.W. 2d 932, 940 (Tex. App. 1997) ("[Defendant's] failure to fulfill this promise [to be responsible for problems with rental

28

unit] is actionable as a breach of contract and not under the DTPA"), *vacated on other grounds*, 963 S.W. 2d 917, 918 (Tex. App. 1998). Thus, Forrest's and Rodriguez's claims for fraudulent omission and consumer fraud fail under Texas law.[23] (¶¶702-711.)

Similarly, the economic loss rule bars common law and consumer fraud claims in Pennsylvania, particularly in cases seeking economic losses for allegedly defective vehicles. 73 Pa. Stat. §201-1, et seq.; *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 680-81 (3d Cir. 2002) (holding that "the district court correctly applied the economic loss doctrine to appellants' [Pennsylvania] fraudulent concealment claims" that automotive manufacturer concealed alleged defects). In *Werwinski*, the Third Circuit held that "exempting [consumer fraud] claims from the effects of the economic loss doctrine would virtually nullify the doctrine since [the statute] is broad enough to encompass nearly every misrepresentation claim in the commercial sales context." *Id.* at 681;[24] *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684-85 (E.D. Pa. 2011) (dismissing Pennsylvania fraud claims that van axles were defective because the alleged "intentional misconduct

---

[23]  Although Forrest and Rodriguez allege "Polaris intended to induce, and did induce, Plaintiff and the other Class members to purchase or lease a Class vehicle" (¶890), this cursory reference does not convert the claim to one for fraudulent inducement, as this Court held. Opinion at 989 n.4 ("Plaintiffs do not allege fraudulent inducement claims in the amended complaint.").

[24]  The Third Circuit's *Werwinski* decision is the most persuasive authority absent authority from Pennsylvania's highest court. *See Arena Holdings Charitable LLC v. Harman Pro. Inc.*, 785 F. 3d 292, 296 (8th Cir. 2015) (noting that "other circuits defer to prior panel decisions absent a subsequent state court decision or statutory amendment that makes the prior federal opinion *clearly wrong*").

relates to the quality of the good sold"); *see also eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A. 2d 10, 20 n.11 (Pa. Super. Ct. 2002) (finding *Werwinski*'s "general line of reasoning" in applying economic loss rule to intentional fraud persuasive); *Whitaker v. Herr Foods, Inc.*, 2016 WL 4060127, at *9 (E.D. Pa. July 29, 2016) ("Intentional misrepresentation claims are generally preempted by the economic loss rule"); *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 721 (E.D. Pa. 2015).

> **B.    Louisiana, Pennsylvania, South Dakota and Texas Do Not Impose A Duty To Disclose Under The Facts Alleged By Plaintiffs.**

Fraudulent omission requires a duty to disclose the allegedly concealed information. Texas, Pennsylvania, Louisiana, and South Dakota do not impose any duty to disclose under the allegations here, so the fraudulent omission claims of plaintiffs from those states (Forrest, Rodriguez, Elkin, Guthrie, and Turgeon) should be dismissed.

Under Texas law, "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W. 2d 667, 674 (Tex. 1998); *Gonzalez v. Nat'l Ins. Crime Bureau*, 427 F. App'x 394, 398 (5th Cir. 2011) (same); *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 975 (N.D. Tex. 2014) (applying dismissing Texas fraudulent omission claim for lack of duty to disclose); *Imperial Premium Fin., Inc. v. Khoury*, 129 F. 3d 347, 352-53 (5th Cir. 1997) ("[I]n the absence of a duty to disclose, mere silence does not amount to fraud or misrepresentation.").

Here, Texas plaintiffs Forrest and Rodriguez cannot allege a fiduciary relationship with Polaris.  Nor do they allege a confidential relationship, which requires that "the parties

have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W. 2d at 674 ("subjective trust does not transform arm's-length dealing into a fiduciary relationship"); *Garcia*, 127 F. Supp. 3d at 237 (dismissing Texas concealment claims). Thus, their fraudulent omission claims fail.

Similarly, in Pennsylvania, no duty to disclose arises absent a confidential or fiduciary relationship between the parties: "an omission is actionable as fraud only where there is an independent duty to disclose the omitted information; and that such an independent duty exists where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure." *Matter of Estate of Evasew*, 584 A. 2d 910, 913 (Pa. 1990); *see also Protica, Inc. v. iSatori Techs., LLC*, 2012 WL 1071223, at *5 (E.D. Pa. Mar. 30, 2012) ("a duty to disclose does not typically arise unless there is a confidential or fiduciary relationship between the parties").

Because manufacturers do not have a fiduciary or confidential relationship with consumers, Pennsylvania courts have held that manufacturers do not have a duty to disclose. *See Slippery Rock Area School District v. Tremco, Inc.*, 2016 WL 3198122, at *12-13 (W.D. Pa. June 9, 2016) (dismissing fraudulent concealment claim against manufacturer, despite high failure rates); *Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 679 (E.D. Pa. 2014) (allegations of "cover-up of manufacturing defects … cannot constitute fraudulent concealment"). So too with South Dakota and Louisiana. *See, e.g., Raven Indus., Inc. v. Topcon Positioning Sys., Inc.*, 2009 WL 2998570, at *5 (D.S.D. Sept.

31

18, 2009) ("[T]he only situation in which the South Dakota Supreme Court has imposed a duty of disclosure upon parties to an arm's-length business transaction is upon finding that an employment or fiduciary relationship exists between the parties."); *Central Facilities Operating Co., L.L.C. v. Cinemark USA, Inc.*, 36 F. Supp. 3d 700, 716- 17 (M.D. La. 2014) (surveying Louisiana law and concluding that "courts have consistently found that a legal duty must be predicated on a special relationship like a fiduciary relationship").  In the absence of such a relationship, which does not exist here, the fraudulent omission claims of plaintiffs Forest, Rodriguez, Elkin, Turgeon, and Guthrie should be dismissed.

## C. Luna And Guthrie Fail To State Consumer And Common Law Fraud Claims Against Polaris.

Unlike the consumer and common law fraud claims the Court previously sustained, Luna and Guthrie do not allege they "researched defendants' products before purchasing their vehicles," much less that they "review[ed] defendants' promotional materials, website, and commercials."  Opinion at 988.  Rather, each alleges only that he discussed the purchase with friends and salespersons from independent dealerships prior to purchase. (¶¶32, 56.)  And statements or representations by third parties, including dealership representatives, cannot be attributed to Polaris, as they are separate entities from, and not agents of, Polaris.  *See, e.g.*, *Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022, at *6 & n.9 (C.D. Cal. Jan. 7, 2015) (The "relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers.") (collecting cases); *State ex*

*rel. Bunting v. Koehr,* 865 S.W. 2d 351, 354 (Mo. 1993) ("The relationship between the dealers and [manufacturer] for the sale of [manufacturer's] products is, therefore, that of buyer and seller, not agent and principal."); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 290 (5th Cir. 2004). Neither Luna nor Guthrie alleges he communicated with anyone from Polaris or reviewed or relied on any materials or representations made by Polaris. Without such allegations, their fraud and consumer fraud claims fail as a matter of law. *See, e.g., Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014) (dismissing California fraud claim with prejudice where plaintiff failed to allege misrepresentations attributable to defendants); *ESG Capital Partners, LP v. Stratos*, 2013 WL 12131356, at *6 (C.D. Cal. Aug. 15, 2013) (same); *Galope v. Deutsche Bank Nat'l Tr. Co.*, at *5 (C.D. Cal. Jan. 12, 2015), *aff'd*, 666 F. App'x 671 (9th Cir. 2016) ("Plaintiff's [consumer fraud] and fraud claims fail because she has not shown that she relied on any misrepresentation or omission ***attributable to the Barclays Defendants***."); *Nussli US, LLC v. Nola Motorsports Host Comm., Inc.*, 2016 WL 4064011, at *10 (E.D. La. July 29, 2016) (dismissing Louisiana fraud claims based on alleged misrepresentations not attributable to defendants).

## V.     FOUR OF GUTHRIE'S CLAIMS ARE BARRED BY LOUISIANA LAW.

Guthrie's claims for unjust enrichment, fraudulent omission, consumer fraud, and implied warranty are barred by the exclusivity provision of Louisiana's Products Liability Act ("LPLA"). The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for

damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." La. Rev. Stat. §2800.52.   None of these claims arise under the LPLA, and courts routinely dismiss them.   *See, e.g.*, *Cantu v. C.B. Fleet Holding Co*., 2007 WL 689566, at *3 (W.D. La. Mar. 1, 2007) (affirming dismissal of negligence, fraud by misrepresentation, and implied warranty claims); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 662 (E.D. La. 2014) (dismissing fraudulent concealment, implied warranty, and unjust enrichment claims); *McLaughlin v. GlaxoSmithKline, LLC*, 2014 WL 669349, at *3 (W.D. La. Jan. 6, 2014) (dismissing fraud and unjust enrichment claims); *Hilton v. Atlas Roofing Corp. of Miss.*, 2006 WL 1581239, at *2 (E.D. La. May 18, 2006) (same).   Besides redhibition (brought under the LPLA), Guthrie's claims should be dismissed.

## CONCLUSION

As set forth in its motion and herein, the vast majority of plaintiffs' claims should be dismissed.   Polaris respectfully requests that the Court dismiss with prejudice all claims other than Luna's unjust enrichment and warranty claims, Halvorsrod's and Rogers' consumer fraud claims, Turgeon's unjust enrichment and consumer fraud claims, and Guthrie's redhibition claims.

34

Respectfully submitted,

Dated:  July 12, 2019

*/s/ Wendy J. Wildung*
Wendy J. Wildung (MN #117055)
Faegre Baker Daniels LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
Tel: (612) 766-7759
Wendy.wildung@FaegreBD.com

 */s/ R. Allan Pixton*

Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
Paul Collier (admitted pro hac vice)
R. Allan Pixton (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL  60654-3406
Phone:  (312) 862-2000
Fax:  (312) 862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com
paul.collier@kirkland.com
allan.pixton@kirkland.com

*Attorneys for Defendants Polaris Industries Inc.
and Polaris Sales Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2019, I electronically filed the foregoing using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *R. Allan Pixton*
R. Allan Pixton

36