UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re Polaris Marketing, Sales Practices, and Products Liability Litigation

Case No. 18-cv-0939 (WMW/DTS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' first amended consolidated class-action complaint for lack of standing and for failure to state a claim on which relief can be granted. (Dkt. 86.) For the reasons addressed below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiffs are 14 individuals who reside in 13 states.[1] Defendants Polaris Industries, Inc. and Polaris Sales Inc. design and manufacture off-road vehicles and their component parts, including engines. Each Plaintiff, between approximately May 8, 2014, and February 9, 2018, purchased an off-road vehicle manufactured by Defendants.

Plaintiffs allege that a design defect, namely "excessive heat defect," has caused more than 250 fires, more than 30 severe injuries, and at least three deaths. According to

---

[1] Plaintiffs are James Bruner of Alabama, Jose Luna of California, Clint Halvorsrod of Florida, Robert Lenz of Georgia, Michael Zeeck of Illinois, Jimmy Guthrie of Louisiana, Chad Rogers of Michigan, Richard Berens of Minnesota, Michael Jacks of Ohio, Benjamin Elkin of Pennsylvania, Les Turgeon of South Dakota, Bryan Forrest and Isaac Rodriguez of Texas, and Ed Beattie of Nebraska (who purchased his off-road vehicle in Wyoming).

Plaintiffs, the excessive-heat design defect is common to all of the vehicles at issue, which are equipped with an unusually high-powered "ProStar" engine. Seven of the Plaintiffs—Luna, Halvorsrod, Guthrie, Rogers, Elkin, Turgeon, and Rodriguez—allege that during the operation of their off-road vehicles, the vehicles caught fire, which resulted in a total loss of the vehicles.[2]

In April 2018, Plaintiffs commenced multiple putative class-action lawsuits against Defendants arising from the alleged defects and fire hazards associated with the class vehicles. United States Magistrate Judge David T. Schultz consolidated these cases and appointed interim counsel to act on behalf of the putative class. Magistrate Judge Schultz also ordered Plaintiffs to file a consolidated complaint, which Plaintiffs filed on June 15, 2018. The consolidated complaint alleged 54 counts against Defendants.

On March 6, 2019, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' consolidated complaint. In doing so, the Court dismissed without prejudice claims asserted by seven of the Plaintiffs for lack of standing. The Court also dismissed without prejudice the breach-of-warranty, Magnuson-Moss Warranty Act (MMWA), and unjust-enrichment claims asserted by two of the Plaintiffs. And the Court dismissed with prejudice the fraudulent-omission claims asserted by two of the Plaintiffs.

---

[2] Defendants refer to these seven Plaintiffs as "Affected Plaintiffs," and the remaining seven Plaintiffs as "Unaffected Plaintiffs." Because these references presume a legal conclusion on a contested issue, namely, whether these Plaintiffs have suffered an injury in fact, the Court refers to the two groups of Plaintiffs as the "Fire Plaintiffs" and the "No-Fire Plaintiffs."

Plaintiffs amended their consolidated complaint on May 14, 2019, adding four plaintiffs from three other states. Counts 2 through 65 of Plaintiffs' first amended consolidated complaint allege state-law claims, including violations of state consumer-fraud laws, breach of express and implied warranties, fraudulent omission, and unjust enrichment. These claims pertain to the 13 states in which Plaintiffs purchased allegedly defective off-road vehicles. Plaintiffs allege that the engine defects have diminished the value of their vehicles and, had Plaintiffs known about the engine defects, Plaintiffs either would not have purchased the vehicle or would have paid significantly less for the vehicle. Plaintiffs seek injunctive and monetary relief, and they expressly decline to seek damages for any personal injuries resulting from the alleged engine defects.

Defendants move to dismiss each count of Plaintiffs' amended consolidated complaint except for (1) Plaintiff Luna's unjust-enrichment and breach-of-warranty claims pursuant to California law; (2) Plaintiff Halvorsrod's and Plaintiff Rogers's consumer-fraud claims pursuant to Florida and Minnesota law, respectively; (3) Plaintiff Turgeon's unjust-enrichment and consumer-fraud claims pursuant to South Dakota law; and (4) Plaintiff Guthrie's redhibition claim pursuant to Louisiana law. Plaintiffs' claims must be dismissed, Defendants contend, for lack of standing, Fed. R. Civ. P. 12(b)(1), or for failure to state a claim on which relief can be granted, Fed. R. Civ. P. 12(b)(6). The Court addresses each argument in turn.

## ANALYSIS

I. **Standing (Counts 2–6, 17–25, 37–46, 57–61,[3] and 62–65)**

Defendants contend that the No-Fire Plaintiffs lack standing under Article III of the United States Constitution. The jurisdiction of federal courts extends only to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). To satisfy the case-or-controversy requirement of Article III, a plaintiff must establish standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). Standing is determined based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4. Because standing is a jurisdictional prerequisite, a plaintiff must establish standing before a federal court may reach the merits of a lawsuit. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). A district court must dismiss any aspect of a lawsuit over which it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). For these reasons, the Court addresses the standing issue first.

To satisfy the requirements of standing, each plaintiff must have suffered an injury in fact, establish a causal relationship between the contested conduct and the alleged injury, and show that a favorable decision would redress the injury. *Lujan*, 504 U.S. at 560–61;

---

[3] Counts 57 through 61 of the amended consolidated complaint are asserted jointly by Plaintiffs Forrest and Rodriguez, both of Texas. It is undisputed that Plaintiff Rodriguez has standing to assert his claims because he suffered an injury in fact, namely the total loss of his vehicle due to its catching on fire. Accordingly, only Plaintiff Forrest's claims are at issue in this section.

*Hargis*, 674 F.3d at 790. Only the injury-in-fact requirement is at issue here. An injury in fact "must be concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). A *particularized* injury in fact "affect[s] the plaintiff in a *personal and individual* way." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *Lujan*, 504 U.S. at 560 n.1).

In the context of defective products, a plaintiff must allege that the plaintiff's product *exhibited* the alleged defect. *Id.* In a putative class-action lawsuit such as this case, the class representative must have standing to assert the claim individually in order to have standing to assert the claim as a class representative. *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 863 (D. Minn. 2012) (citing *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999)).

In its March 6, 2019 Order, the Court concluded that eight Plaintiffs failed to allege an injury in fact sufficient to confer Article III standing as to their claims because "there [were] no allegations that their vehicles ever overheated, caught fire, or otherwise failed to perform as intended." And the original consolidated complaint "[did] not allege, directly or by reasonable inference, that *all* of the vehicles that contain the defective engine *necessarily* overheat, catch fire, or otherwise malfunction." Plaintiffs now assert that the amended consolidated complaint eliminates this deficiency "by clarifying that the Class Vehicles actually exhibit excessive heat in their engine compartments" and the "excessive heat . . . is an inherent defect present in all Class Vehicles." Defendants challenge this contention, arguing that Plaintiffs fail to identify what constitutes "excessive heat," and

5

Plaintiffs' addition of the term "defect" to the complaint does not transform Plaintiffs' legal conclusions into factual allegations that support the existence of standing.

In support of their position, Plaintiffs rely on *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011). But the No-Fire Plaintiffs' allegations are distinguishable from the facts in *Zurn*, where the "universal inherent defect" of stress corrosion already had manifested in all systems. *See* 644 F.3d at 617. None of the No-Fire Plaintiffs alleges that their particular vehicle malfunctioned in any way. The No-Fire Plaintiffs do not allege that the vehicles they purchased ever overheated, caught fire, or otherwise failed to perform as intended. Although all of the No-Fire Plaintiffs, except Plaintiffs Forrest and Beattie,[4] allege that their vehicles "generate[ ] excessive heat due to [the defect]," the complaint also concedes that "engines and exhaust systems in all ROVs typically generate high temperatures" and it is up to manufacturers to "mitigate" these high temperatures. Thus, it cannot be reasonably inferred that the generation of excessive heat or high temperatures by these vehicles is an *individualized* or *particularized* injury to any of the No-Fire Plaintiffs. *See Wallace*, 747 F.3d at 1030. The No-Fire Plaintiffs allege that they purchased vehicles from a product line that contains a defect and that their vehicles exhibit the defect. But the No-Fire Plaintiffs do not allege any fact as to how that defect manifests in their respective cases. Thus, the No-Fire Plaintiffs' allegations do not establish standing.

---

[4] Plaintiffs Forrest and Beattie each allege that "he feels excessive heat come through the passenger compartment." But nothing in the amended consolidated complaint links this excessive heat to the engine of their respective vehicles or otherwise suggests that the vehicle in fact overheats.

6

Because Plaintiffs Bruner, Lenz, Zeeck, Berens, Jacks, Forrest, and Beattie fail to allege a *particularized* and *actual* injury in fact, these Plaintiffs lack Article III standing to pursue their claims in federal court. Consequently, the following counts are dismissed without prejudice for lack of subject-matter jurisdiction: Count 1 as to the No-Fire Plaintiffs, Counts 2 through 6 as to Plaintiff Bruner, Counts 17 through 25 as to Plaintiffs Lenz and Zeeck, Counts 37 through 46 as to Plaintiffs Berens and Jacks, Counts 57 through 61 as to Plaintiff Forrest, and Counts 62 through 65 as to Plaintiff Beattie.

**II. Failure to State a Claim**

Defendants also argue that Plaintiffs fail to state claims on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint must allege sufficient facts such that, when accepted as true, they state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Failure to state a claim on which relief can be granted warrants dismissal. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a facially plausible claim has been alleged, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Such factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 678.

A. **Breach-of-Warranty Claims of Plaintiffs Halvorsrod, Guthrie, Rogers, Elkin, Turgeon, and Rodriguez (Counts 14, 27–28, 33–34, 48–49, 53–54, 58–59)**

Defendants next argue that the breach-of-warranty claims asserted by Plaintiffs Halvorsrod, Rogers, Elkin, Turgeon, and Rodriguez must be dismissed because the amended consolidated complaint does not allege that these Plaintiffs gave Defendants the requisite pre-suit notice of an alleged breach of warranty. Alternatively, Defendants argue that the breach-of-warranty claims alleged by these Plaintiffs, as well as Plaintiff Guthrie, must be dismissed as barred by Defendants' limited warranty.

1. **Pre-Suit Notice**

Plaintiffs Elkin, Turgeon, and Rodriguez allege that Defendants breached their express warranty and implied warranty of merchantability in violation of Pennsylvania, South Dakota, and Texas laws, respectively.[5] *See generally* 13 Pa. Cons. Stat. §§ 2313, 2A210, 2314, 2A212; S.D. Codified Laws §§ 57A-2-313, 57A-2-314; Tex. Bus. & Com. Code §§ 2.313, 2.314. Defendants contend that Plaintiffs Elkin, Turgeon, and Rodriguez were required to give pre-suit notice of an alleged breach of warranty before commencing this lawsuit, pursuant to the laws of each Plaintiff's respective state.

To recover on a breach-of-warranty claim under Pennsylvania law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify

---

[5] In its March 6, 2019 Order, the Court dismissed without prejudice the breach-of-warranty claims asserted by Plaintiffs Halvorsrod and Rogers for failure to provide Defendants pre-suit notice as required under Florida and Michigan laws, respectively. Because the amended consolidated complaint does not allege that Plaintiffs Halvorsrod and Rogers provided the required pre-suit notice, dismissals of their breach-of-warranty claims are warranted for the same reasons set forth in the Court's March 6, 2019 Order.

the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1); *see also Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718–19 (E.D. Pa. 2013) (dismissing claims for breach of implied and express warranties because plaintiffs "failed to allege that they provided pre-suit notice to Defendant of any alleged defect"). South Dakota and Texas laws have a materially identical pre-suit notice requirement. *See* S.D. Codified Laws § 57A-2-607; *Brookings Mun. Utils., Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1177 (D.S.D. 2000) (dismissing breach-of-warranty claims because plaintiff did not provide pre-suit notice to defendant); Tex. Bus. & Com. Code §§ 2.607(c)(1); *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 746 (N.D. Tex. 2016) (dismissing breach-of-warranty claims because plaintiffs failed to "allege that they provided the required notice to Defendants").

Plaintiffs do not dispute that Elkin, Turgeon, and Rodriguez failed to provide pre-suit notice to Defendants, as is required by the law of their respective states. Instead, relying on laws from states other than Pennsylvania, South Dakota, and Texas, Plaintiffs contend that Defendants' actual knowledge of the engine defect satisfies any pre-suit notice requirement. But case law from jurisdictions other than Pennsylvania, South Dakota, and Texas has no bearing on this issue. Courts in Pennsylvania, South Dakota, and Texas, applying their respective laws, require plaintiffs to provide defendants pre-suit notice, and those courts dismiss breach-of-warranty claims when plaintiffs fail to comply with the pre-suit notice requirement. *See, e.g.*, *Schmidt*, 972 F. Supp. 2d at 718–19; *Brookings*, 103 F. Supp. 2d at 1177; *Elmazouni*, 220 F. Supp. 3d at 746. Plaintiffs provide no persuasive legal basis to reach a different result here.

For these reasons, the breach-of-warranty claims asserted by Plaintiffs Halvorsrod, Rogers, Elkin, Turgeon, and Rodriguez, (Counts 14, 33, 34, 48, 49, 53, 54, 58, and 59), are dismissed without prejudice. And because an MMWA claim requires an underlying state-law breach-of-warranty claim, Count 1, as asserted by Plaintiffs Halvorsrod, Rogers, Elkin, Turgeon, and Rodriguez, also is dismissed without prejudice. *See Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009) ("The MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law.").

### 2. Defendants' Limited Warranty

Plaintiff Guthrie alleges that Defendants breached their express warranty in violation of Louisiana law.[6] *See* La. Rev. Stat. §§ 9:2800.51–60. Defendants contend that Plaintiff Guthrie's claim is barred by Defendants' limited warranty.

The Louisiana Products Liability Act (LPLA) provides a cause of action for violation of an express warranty when a "product is unreasonably dangerous because it

---

[6] Plaintiff Guthrie also alleges claims under Louisiana law for breach of an implied warranty, unjust enrichment, fraudulent omission, and consumer fraud. But each of these claims is barred by the exclusive-theory provision of the Louisiana Products Liability Act (LPLA). *See* La. Rev. Stat. § 9:2800.52 ("This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products."); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 661–63 (E.D. La. 2014) (dismissing fraudulent-concealment, implied-warranty, and unjust-enrichment claims). *Cf. Cassidy v. Ford Motor Co.*, No. 15-2483, 2016 WL 687621, at *4 (E.D. La. Feb. 19, 2016) (allowing implied-warranty claim as an alternative theory to redhibition claim). The LPLA does not preclude Plaintiff Guthrie's redhibition claim, however, *Aucoin v. S. Quality Homes, LLC*, 984 So. 2d 685, 691 n.8 (La. 2008), and Defendants do not seek dismissal of that claim.

10

does not conform to an express warranty [made by the manufacturer]." La. Rev. Stat. §§ 9:2800.54(B)(4), 9:2800.58. As to Plaintiff Guthrie, Defendants' warranty provides:

> POLARIS Industries Inc. . . . gives a SIX MONTH LIMITED WARRANTY on all components of your POLARIS vehicle against defects in material or workmanship. [. . .]
>
> This warranty covers parts and labor charges for repair or replacement of defective parts and begins on the date of purchase by the original retail purchaser.

The warranty is expressly limited to "repair or replacement" of the vehicle parts that are "defective." A request for "repair or replacement" of defective parts is, therefore, a condition to trigger the warranty. *See, e.g.*, *Hinson v. Techtronic Indus. Outlets, Inc.*, 126 F. Supp. 3d 747, 759 (W.D. La. 2015). Here, the amended consolidated complaint does not allege that Plaintiff Guthrie requested repair or replacement of the parts of his vehicle or that Defendants refused to honor any such request. Accordingly, Plaintiff Guthrie's express-warranty claim cannot proceed in light of Defendants' limited warranty.

For these reasons, Plaintiff Guthrie's breach-of-express-warranty claim, (Count 28), is dismissed without prejudice, and his claims of breach of implied warranty, unjust enrichment, fraudulent omission, and consumer fraud, (Counts 27, 29–31), are dismissed with prejudice. Because an MMWA claim requires an underlying state-law breach-of-warranty claim, Count 1, as asserted by Plaintiff Guthrie, also is dismissed without prejudice. *See Sipe*, 572 F.3d at 530.

### B. Unjust-Enrichment Claims of Plaintiffs Halvorsrod, Rogers, Elkin, and Rodriguez (Counts 16, 36, 51, and 61)

Defendants next argue that the unjust-enrichment claims asserted by Plaintiffs Halvorsrod, Rogers, Elkin, and Rodriguez must be dismissed because these plaintiffs only *indirectly* conferred a benefit on Defendants, as these Plaintiffs purchased their vehicles from independent dealerships. This failure to allege that a benefit was *directly* conferred on Defendants precludes a claim for unjust enrichment under Pennsylvania law and Texas law, Defendants contend.[7] Plaintiffs counter that neither Pennsylvania law nor Texas law requires direct conferral of a benefit on a defendant in order to support an unjust-enrichment claim.

Although both parties cite federal decisions in support of their respective positions,[8] none is authoritative as to this Court, Pennsylvania state courts, or Texas state courts. This

---

[7] In its March 6, 2019 Order, the Court dismissed without prejudice the unjust-enrichment claims asserted by Plaintiffs Halvorsrod and Rogers because these plaintiffs only indirectly conferred a benefit on Defendants, as they purchased their vehicles from independent dealerships. Because the amended consolidated complaint does not allege any facts contrary to these findings, dismissals of the unjust-enrichment claims asserted by Plaintiffs Halvorsrod and Rogers are warranted for the same reasons set forth in the Court's March 6, 2019 Order.

[8] *Compare Schmidt*, 972 F. Supp. 2d at 721–22 (dismissing unjust-enrichment claims because "[t]he 'benefit' must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim"), *and In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-4558, 2011 WL 601279, at *10 (D.N.J. Feb. 16, 2011) ("predict[ing] that Texas courts would not find that [plaintiff] conferred a sufficiently direct benefit upon [defendant] to sustain a claim for unjust enrichment"), *with Glob. Ground Support, LLC v. Glazer Enters.*, 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008) ("The claim of unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits." (Internal quotation marks omitted.)), *and In re Okedokun*, 593 B.R. 469, 580 (Bankr. S.D. Tex. 2018) ("Texas law also reveals that unjust enrichment can touch "passively received" benefits . . . .")

Court's research has not discovered any case law from Pennsylvania or Texas courts that would settle this issue. Nor has this Court's research found a legal requirement in either Pennsylvania or Texas law for a direct conferral of a benefit on a defendant to maintain an unjust-enrichment claim.

For these reasons, Defendants' motion to dismiss is granted as to the unjust-enrichment claims asserted by Plaintiffs Halvorsrod and Rogers, (Counts 16 and 36), and denied as to the unjust-enrichment claims asserted by Plaintiffs Elkin and Rodriguez, (Counts 51 and 61). Counts 16 and 36 are dismissed with prejudice.[9]

### C. Fraud Claims of Plaintiffs Luna, Guthrie, Elkin, Turgeon, and Rodriguez (Counts 7, 10, 12, 29, 47, 50, 52, 55, 57, and 60)[10]

Defendants next argue that the fraud claims asserted by Plaintiffs Luna, Guthrie, Elkin, Turgeon, and Rodriguez fail because the law of their respective states bars these claims under the economic-loss rule. Defendants alternatively assert that these claims must

---

[9] Because Plaintiffs Halvorsrod and Rogers had an opportunity to cure the defect in their unjust-enrichment claims after the Court previously dismissed those claims and have failed to do so, dismissal of these claims *with* prejudice is appropriate. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (concluding that dismissal with prejudice is appropriate when amending the claim would be futile); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 620 (8th Cir. 1995) ("A district court may refuse to grant leave to amend if the plaintiff had an earlier opportunity to cure a defect in [the] complaint but failed to do so.").

[10] The amended consolidated complaint also includes the fraudulent-omission claims asserted by Plaintiffs Halvorsrod and Rogers, (Counts 15 and 35), which the Court previously dismissed with prejudice. Plaintiffs assert that their inclusion of these claims in the amended consolidated complaint is "strictly to preserve [them] for purposes of appeal."

be dismissed for failure to plead sufficient facts to establish either a duty to disclose or representations by Defendants. The Court addresses each argument in turn.

1. **Economic-Loss Rule Under Pennsylvania Law and Texas Law**

Defendants argue that the fraud claims of Plaintiffs Elkin and Rodriguez are barred by the economic-loss rule under Pennsylvania law and Texas law.

The economic-loss rule generally precludes a contracting party who suffers purely economic losses from recovery on a liability theory sounding in tort. *See Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. 2007). Texas courts apply the economic-loss rule in cases involving defective products. *See, e.g.*, *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) (explaining that economic losses are more appropriately addressed through statutory warranty actions or common-law breach-of-contract suits than through tort claims); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) ("When the Business and Commerce Code and its warranty provisions apply, the economic loss rule measures the damages recoverable."). Texas law also bars a consumer's recovery in tort from a remote manufacturer. *See Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex. 1977).

Similarly, Pennsylvania courts applying the economic-loss rule bar tort recovery in products-liability cases. *See N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925–26 (Pa. Super. Ct. 1989) (en banc); *REM Coal Co. v. Clark Equipment Co.*, 563 A.2d 128, 133 (Pa. Super. Ct. 1989) (en banc) ("Pennsylvania's breach of warranty law supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties as to product performance. It provides a disappointed

purchaser a complete remedy for loss of the product itself and of its use within the limits of the parties' contractual understandings.").

Here, Plaintiffs expressly decline to seek damages for any personal injury resulting from the engine defects. Nor do Plaintiffs seek repair or replacement costs or claim damage to other property. Accordingly, the fraud claims of Plaintiffs Elkin and Rodriguez are barred by the economic-loss doctrine under applicable Pennsylvania and Texas laws. *See, e,g.*, *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 487–91 (E.D. Pa. 2016) (dismissing plaintiff's fraud claim because it concerns the quality and characteristics of defendant's products and, thus, is intrinsic to the breach-of-warranty claim); *Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817, 820 (N.D. Tex. 2011) (dismissing tort claims to the extent those claims seek recovery of the economic value of the defective product).

For these reasons, the fraud claims asserted by Plaintiffs Elkin and Rodriguez, (Counts 47, 50, 57 and 60), are dismissed with prejudice.

**2.     Duty to Disclose Under South Dakota Law**

Defendants next challenge the fraudulent-omission claim of Plaintiff Turgeon, arguing that it fails because there is no duty to disclose under South Dakota law.

A failure to disclose information constitutes fraud only if there is a duty to disclose the information. *See Schwartz v. Morgan*, 776 N.W.2d 827, 831 (S.D. 2009). And a duty to disclose does not arise unless an employment relationship or fiduciary relationship exists between the parties. *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 499–500 (S.D. 1990).

Plaintiffs do not dispute that there is no employment or fiduciary relationship between a manufacturer and a consumer to justify a fraudulent-omission claim here. Instead, relying on *Lindskov v. Lindskov*, 800 N.W.2d 715, 719 (S.D. 2011), Plaintiffs maintain that South Dakota law imposes a duty to disclose when there is an imbalance of information between the parties. Plaintiffs' reliance on *Lindskov* is misplaced, however. *Lindskov* involved parties dealing directly with one another in a business transaction. Those circumstances are not present here. The amended consolidated complaint alleges that Plaintiff Turgeon purchased his vehicle in South Dakota from "AT Sports," not directly from Defendants.[11] Thus, *Lindskov* does not apply to Plaintiff Turgeon's fraudulent-omission claim.

In light of this pleading deficiency, Plaintiff Turgeon's fraudulent-omission claim, (Count 55), is dismissed without prejudice.

### 3. Fraud Claims Under California Law

Defendants next seek dismissal of Plaintiff Luna's fraud claims because the amended consolidated complaint does not allege that Plaintiff Luna received any representations made by Defendants.

When pleading a fraud claim, whether statutory or common-law, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) (statutory); *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (common law). The complaint must set

---

[11] Plaintiffs do not allege that AT Sports is one of Defendants' dealerships.

forth the "who, what, when, where, and how" surrounding the alleged fraud. *E-Shops Corp.*, 678 F.3d at 663. In addition, under California law, to state a fraud claim against a corporation, a plaintiff must allege with particularity "the names of the persons who allegedly made the fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. Rptr. 2d 861, 862–63 (Cal. Ct. App. 1991). Failure to satisfying these pleading requirements warrants dismissal of the fraud claim. *See, e.g.*, *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014); *No Cost Conf., Inc. v. Windstream Comm'ns, Inc.*, 940 F. Supp. 2d 1285, 1302–03 (S.D. Cal. 2013).

Here, the amended consolidated complaint alleges that, before purchasing his car, "Plaintiff Luna communicated with friends" and a "salesperson at Mountain Motorsports in Ontario, California." But Plaintiffs do not allege that Mountain Motorsports is one of Defendants' authorized dealerships. *Cf. Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (allowing fraud claims based on communications with manufacturer's authorized dealership sales representatives).[12] As alleged, Plaintiff Luna's fraud claims do not identify any actionable statement or omission attributable to Defendants. As such, Luna fails to plead his fraud claims with particularity, as required.

For these reasons, Plaintiff Luna's fraud claims, (Counts 7, 10, and 12), are dismissed without prejudice.

---

[12] Plaintiffs' reliance on *Daniel* is, thus, unavailing.

**ORDER**

Based on the foregoing analysis and all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss Plaintiffs' amended consolidated complaint, (Dkt. 86), is **GRANTED IN PART** and **DENIED IN PART** as addressed herein.

2. Counts 15, 16, 27, 29 through 31, 35, 36, 47, 50, 57 (as asserted by Plaintiff Isaac Rodriguez), and 60 (as asserted by Plaintiff Isaac Rodriguez) of the amended consolidated complaint, (Dkt. 70), are **DISMISSED WITH PREJUDICE**.

3. Count 1 (as asserted by all Plaintiffs except Plaintiff Luna), 2 through 7, 10, 12, 14, 17 through 25, 28, 33, 34, 37 through 46, 48, 49, 53 through 55, 57 through 61 (as asserted by Plaintiff Bryan Forrest), 58 (as asserted by Plaintiff Isaac Rodriguez), 59 (as asserted by Plaintiff Isaac Rodriguez), and 62 through 65 of the amended consolidated complaint, (Dkt. 70), are **DISMISSED WITHOUT PREJUDICE**.


Dated: February 26, 2020            s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge