**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: Polaris Marketing, Sales Practices, and Products Liability Litigation | Case No. 0:18-cv-00939-WMW-DTS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR ENTRY OF JUDGMENT UNDER FED. R. CIV. P. 54(b)
OR, IN THE ALTERNATIVE, FOR CERTIFICATION
UNDER 28 U.S.C. § 1292(b), AND FOR A STAY OF PROCEEDINGS**

**Dated:** March 19, 2020

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.   THIS COURT SHOULD DIRECT THE ENTRY OF JUDGMENT ON THE ORDER UNDER RULE 54(b) BECAUSE THERE IS NO JUST REASON FOR DELAY ............................................................................................................... 3

II.  THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b). ...................................................... 6

    A.   The Court's Order involves a controlling question of law. ........................... 6

    B.   Substantial grounds for difference of opinion exist on the Court's application of Article III standing doctrine. .................................................. 7

    C.   A decision by the Eighth Circuit will materially advance the termination of the litigation by removing the uncertainty currently surrounding the vast majority of claims of the members of the proposed classes. ......................................................................................... 10

III. THE COURT SHOULD STAY THIS CASE UNTIL THE RESOLUTION OF ANY APPEAL. ............................................................................................. 11

CONCLUSION ........................................................................................................ 12

# INTRODUCTION

The Court's February 26, 2020 Order (Dkt. 106) ("Order") presents an issue of law regarding Article III standing on which substantial ground for disagreement exists and that is dispositive not only to the claims of many of the Plaintiffs, but also to the claims of the vast majority of the other members of the classes proposed in this action. Because only the Eighth Circuit can provide finality on these issues, Plaintiffs respectfully request that the Court grant permission to appeal the Order through two separate procedural avenues: Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1292(b).[1]

In its Order, the Court found that Plaintiffs James Bruner, Robert Lenz, Michael Zeeck, Richard Berens, Michael Jacks, Bryan Forrest, and Ed Beattie (the "Dismissed Plaintiffs") lacked Article III standing to assert any of their claims. (Order at 4-7.) Plaintiffs, therefore, request the Court to direct the entry of a final judgment under Fed. R. Civ. P. 54(b) with respect to the Dismissed Plaintiffs, as "there is no just reason" for delaying it. The Order conclusively resolves the Dismissed Plaintiffs' claims, which are distinct from the other Plaintiffs' claims, as the other Plaintiffs are unaffected by the Court's ruling on Article III standing. The Eighth Circuit can consider the Article III standing issue now, with no concern that it will need to consider it again on an appeal from a final judgment on all Plaintiffs' claims.

---

[1] *See Restaura, Inc. v. St. Louis Concessions*, 52 F.3d 189, 190 (8th Cir. 1995) (exercising jurisdiction where district court had certified case under both Rule 54(b) and 28 U.S.C. § 1292(b); Wright, Miller & Kane, Federal Practice and Procedure § 2658.2 (4th ed. 2019 update) ("[I]t may be appropriate for a district judge to certify both under the rule and the statute in an action with multiple claims or multiple parties.").

Plaintiffs submit that in the alternative, the Court should certify the Order under 28 U.S.C. § 1292(b), which allows an interlocutory appeal when the "order involves a question of law as to which there is substantial ground for difference of opinion and…an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Order clearly meets the criteria set out in § 1292(b). As detailed below, the weight of authority cited by Plaintiffs finding Article III standing for claims similar to the Dismissed Plaintiffs' claims clearly shows that a "substantial ground for difference of opinion" exists. Because many Plaintiffs and the vast majority of the other members of the classes they seek to represent are affected by the Court's Article III standing ruling, immediate review by the Eighth Circuit would materially advance resolution of this litigation.

## ARGUMENT

**I.   THIS COURT SHOULD DIRECT THE ENTRY OF JUDGMENT ON THE ORDER UNDER RULE 54(b) BECAUSE THERE IS NO JUST REASON FOR DELAY.**

The Court should direct the entry of judgment on the Dismissed Plaintiffs' claims under Rule 54(b) because the Order satisfies the Rule's criteria.

Under Fed. R. Civ. P. 54(b), "the [district] court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Prior to entering the final judgment, the district court must consider the equities involved and take into account judicial administrative interests so as to prevent piecemeal appeals. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 4 (1980); *Shurgard Storage Centers v. Lipton-U. City, LLC*, 394 F.3d 1041, 1046 (8th Cir. 2005).

3

The Order effectively operates as a final judgment over the Dismissed Plaintiffs' claims, as Rule 54(b) requires. Although the Court dismissed those claims without prejudice, Plaintiffs had already once amended these claims in an attempt to address the Court's earlier dismissal on Article III standing grounds. As the Order notes, Plaintiffs' latest amended complaint included additional allegations intended to "'clarify[] that the Class Vehicles actually exhibit excessive heat in their engine compartments' and the 'excessive…heat is an inherent defect present in all Class Vehicles.'" (Order at 5 (quoting Dkt. 93 at 6-7).) Plaintiffs alleged this excessive heat, combined with inadequate cooling and heat shielding, necessarily results in degradation and melting of the surrounding components, as well as a reduced life cycle. (Dkt. 70 ¶ 4.) In support of these allegations, Plaintiffs conducted expert testing, comparing temperatures in Class Vehicles and non-Class Vehicles, which revealed that Class Vehicles exhibited much more heat than their competitors (*id.* ¶¶ 158-61), as well as noting the availability of third-party aftermarket products designed to mitigate the excessive heat generated by the Class Vehicles (*id.* ¶¶ 142-48), alleging Plaintiffs' own recognition of excessive heat in their Class Vehicles (*id.* ¶¶ 90, 96, 103), and presenting differences in the design of the exhausts in the Class Vehicles and those in competitor vehicles demonstrating the Class Vehicles' inability to properly mitigate heat (*id.* ¶¶ 3-6, 110-40). In light of this Court's finding that even these additional allegations were insufficient to establish Article III standing, Plaintiffs do not anticipate, for all practical purposes, that they could allege anything further to establish Article III standing consistent with the Order, short of an actual fire in their vehicles. Rather, they respectfully submit, as discussed further in Section II, *infra*, that the existence

4

of a defect in their vehicles that causes them to overheat, degrading their components and creating a substantial risk of catching fire, has already been plainly alleged and is sufficient to confer Article III standing.

When making a Rule 54(b) determination, the court may "consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court [will] have to decide the same issues more than once even if there are subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8; *see also In re Flight Transp. Corp. Sec.*, 825 F.2d 1249, 1251 (8th Cir. 1987). The Dismissed Plaintiffs' claims are separate and distinct from the remaining Plaintiffs' claims, whose claims are not subject to an Article III standing challenge from Polaris. Thus, the Eighth Circuit would not need to consider the same Article III standing issue in the event of subsequent appeals.

There is no "just reason" for delaying the Dismissed Plaintiffs' appeal. The interests of judicial economy alone support the entry of final judgment. If the Dismissed Plaintiffs are precluded from appealing until the remaining claims are resolved, the Court may be required to evaluate claims that have different legal bases, but which are predicated on many of the same underlying facts – retreading much of the exact same ground through which it had plowed years earlier.

Finally, a demonstration of clear injustice or hardship resulting from the delay of a final judgment may justify an entry of judgment pursuant to Rule 54(b). *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 930 F. Supp. 1317, 1327 (D. Minn. 1996). The Dismissed Plaintiffs may be forced to wait (1) several years for the resolution of the

5

claims of the remaining Plaintiffs in the action; and (2) a number of additional years while their claims are prosecuted before obtaining final resolution or recovery.  This is also true for the vast majority of the other members of the classes who have not (yet) experienced a fire in their own Class Vehicles and who may fall under this Court's Article III standing holding.  The Order clearly creates a hardship that justifies an entry of a judgment pursuant to Rule 54(b).

## II.   THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

Courts of appeal have jurisdiction over "all final decisions of the district courts." 28 U.S.C. § 1291.  Section 1292(b) of the Judicial Code grants district judges discretionary authority to certify an otherwise non-final order under the following terms:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order.

Thus, under § 1292(b), a district court must determine that an order involves three criteria for certification: "(1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation."  *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994).

### A.   The Order involves a controlling question of law.

Section 1292(b) refers to legal questions which are distinct from a "matter for the discretion of the trial court."  *White*, 43 F.3d at 377.  Under § 1292(b), a "controlling question of law" means "a question of the meaning of a statutory or constitutional

6

provision, regulation, or common law doctrine." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1258 (11th Cir. 2004) (internal quotation marks omitted). In its Order, the Court dismissed the Dismissed Plaintiffs' claims for lack of subject matter jurisdiction, holding that the Dismissed Plaintiffs lack standing to assert their claims under Article III of the United States Constitution. (Order at 4-7.) Because this Court's decision turned on the application and interpretation of a constitutional provision as applied to the Dismissed Plaintiffs claims, the first requirement for granting certification under § 1292(b) is satisfied.

**B.    Substantial grounds for difference of opinion exist on the Court's application of Article III standing doctrine.**

The second prong of the § 1292(b) analysis requires substantial grounds for differences of opinion on the relevant issue. Such a showing is made where "(1) the issue is difficult and of first impression, (2) a difference of opinion exists within the controlling circuit, or (3) the circuits are split on the issue." *W. Tenn. Associated Builders v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn. 2000).[2] Here, such grounds exist as evidenced by the conflict of opinion between this Court's Order and other factually similar decisions finding that allegations of a safety defect alone confer Article III standing.

Most significantly, just three days ago, in a case also involving a defect alleged to present a risk of vehicle fires, the court in *Short v. Hyundai Motor Co.*, No. C19-0318JLR,

---

[2] *See also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (substantial ground for difference of opinion exists where the issue is difficult and of first impression, but need not affect a wide range of pending cases); *German v. Federal Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1399 (S.D.N.Y. 1995) (difference of opinion within the circuit sufficient to establish substantial ground for difference of opinion); *Rafoth v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (split within circuits establishes substantial ground for difference of opinion).

2020 WL 1248782 (W.D. Wash. Mar. 16, 2020) issued its decision denying Defendants' motion to dismiss on Article III standing grounds. In *Short*, the plaintiffs alleged that their vehicles' engines suffered from defects that caused the vehicles to overheat and potentially catch fire. *Id.* at *1. The defendants moved to dismiss certain plaintiffs' claims for lack of Article III standing, arguing that "they do not allege they have experienced *any* problems with their vehicles …." *Id.* at *5. The court held that "these Plaintiffs nevertheless have standing under the economic loss rule," because "Plaintiffs allege that the Class Vehicles suffer from safety defects that create the risk of fire." *Id.* at *5. Thus, even though those plaintiffs had not alleged that they had personally experienced fire or any other problems with their vehicle, their allegation that "if Defendants had disclosed these defects, they would not have purchased their vehicles or would have paid less for them" was sufficient to allege a concrete and particularized injury conferring Article III standing. In this case, the Dismissed Plaintiffs have alleged not only that the Excessive Heat Defect creates a significant risk of fire, but that it immediately begins internally degrading vehicle components. (Dkt. 70 ¶¶ 168-171.)

*Short* is just the latest in a long line of cases recognizing that economic losses for safety defects constitute an injury that confers Article III standing, including three of the largest federal class actions of the past decade in three different Circuits: *In re Gen. Motors LLC Ignition Switch Litig.*, 2018 WL 4351892, at *3 (S.D.N.Y. Sept. 12, 2018) (sustaining claims involving vehicles whose ignition switches never malfunctioned and noting that "while manifestation may be helpful in proving the presence of a defect, it does not follow that recovery for economic loss should turn on whether the defect also caused property or

8

personal damage"); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1335 (S.D. Fla. 2016) (sustaining claims even if the vehicles' airbags never malfunctioned and noting that "[i]f Takata had installed grenades in its airbags that may or may not explode on impact, a court would not require an explosion to demonstrate manifestation of a defect."); and *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) (holding that "experiencing a [sudden unintended acceleration] defect is not required for standing").[3] The irreconcilable conflict between these cases and the Order's application of Article III standing doctrine gives rise to a substantial difference of opinion that should be addressed by the Eighth Circuit.[4] Thus, the second criteria for granting certification under § 1292(b) is also satisfied.

---

[3] Other authorities holding that plaintiffs with economic losses due to vehicle safety defects have Article III standing, even if those plaintiffs have not personally experienced safety problems in their own vehicles, include: *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1218-20 (S.D. Fla. 2017) (finding Article III standing from economic losses due to airbag defect); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *3-6 (E.D. Mich. Apr. 18, 2017) (finding Article III standing from economic losses due to gearshift defect); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2015 WL 12684342, at *9 (C.D. Cal. Apr. 8, 2015) (finding Article III standing from economic losses due to brake switch defect).

[4] Plaintiffs also, for the reasons already discussed, respectfully disagree with the Court's application of Eighth Circuit caselaw regarding Article III standing (*see, e.g.*, Dkt. 93 at 8-14) and submit that there is, at best, uncertainty regarding its proper application that also gives rise to a substantial difference of opinion.

> **C.   A decision by the Eighth Circuit will materially advance the termination of the litigation by removing the uncertainty currently surrounding the vast majority of claims of the members of the proposed classes.**

The third requirement of § 1292(b) necessitates a showing that "the decision of an interlocutory appeal might avoid protracted and expensive litigation." *U.S. ex rel. Hollander v. Clay*, 420 F. Supp. 853, 859 (D.D.C. 1976) (citing the legislative history of 28 U.S.C. § 1292(b)). A strong consideration in considering a § 1292(b) motion is the policy of "minimizing the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." Wright, Miller & Kane, Federal Practice and Procedure § 3930 (4th ed. 2019 update).

Should the Court decline to certify the Order under § 1292(b), the claims of the Dismissed Plaintiffs, as well as the vast majority of the absent class members who have not suffered vehicle fires, will effectively be stayed pending the resolution claims brought by plaintiffs who did experience vehicle fires. This result will clearly require the Court to re-litigate various underlying factual issues relevant to all Plaintiffs' claims. Such a result is contrary to the policy of "minimizing the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings."

Further, while Plaintiffs respectfully disagree with the Court's ruling in the Order regarding Article III standing, a decision by the Eighth Circuit affirming the Order will certainly achieve the goal of avoiding protracted and expensive litigation because such a decision would likely narrow the number of eligible plaintiffs and other class members. Thus, the third criteria under § 1292(b) is also met.

## III.     THE COURT SHOULD STAY THIS CASE UNTIL THE RESOLUTION OF ANY APPEAL.

In the interest of judicial economy, if this Court should grant either of Plaintiffs' requests under Rule 54(b) or § 1292(b), it should also stay all proceedings pending any appeal.  The decision to grant a motion to stay is committed to the sound discretion of the Court.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Arctic Cat Inc. v. Polaris Indus. Inc.*, No. 13-3579 (JRT/FLN), 2015 WL 6757533, at *2 (D. Minn. Nov. 5, 2015).  The power to issue a stay stems from the Court's inherent authority to manage and control its own docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).  The Court may use its "'inherent power to stay the proceedings of an action'" in order to "'control [its] docket, to conserve judicial resources, and to provide for the just determination of cases'" pending before the court. *Arctic Cat*, 2015 WL 6757533, at *2 (citations omitted).  "In determining whether to issue a stay, the Court considers (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues; and (3) whether discovery is complete and whether a trial date has been set." *Novo Nordisk, Inc. v. Paddock Labs., Inc.*, 797 F. Supp. 2d 926, 930 n.3 (D. Minn. 2011) (citation omitted).  These factors weigh in favor of a stay here.

Regarding the first factor, the "delay" inherent in a stay "does not constitute, by itself, undue prejudice." *Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820 (ADM/JSM), 2013 WL 12140482, at *5 (D. Minn. Dec. 20, 2013). Instead, the "key inquiry is whether this delay would prejudice or tactically disadvantage the non-moving party." *Arctic Cat*, 2015 WL 6757533, at *3.  A stay pending appeal would not prejudice

11

or tactically disadvantage Polaris, who stands only to benefit from deferring its obligations to produce documents, otherwise respond to discovery, or potentially pay an eventual judgment against it.

The second factor – whether a stay will simplify the issues – also favors a stay. If the Eighth Circuit affirms the Court's Article III holding, this will likely encourage resolution of the claims of the remaining Plaintiffs as opposed to allowing this litigation to continue with the uncertainty of standing for most of the Plaintiffs and absent class members looming in the background.

Finally, the third factor favors a stay under these circumstances. This case is in its very early stages. With the exception of a relatively small voluntary production by Polaris, no discovery has been conducted, and the case will not be ready for trial for years. A stay while Plaintiffs' appeal is pending will conserve the Court's and the parties' time and resources, especially considering the dispositive nature of the issue that would be before the Eighth Circuit.

Accordingly, all three factors favor a stay while the Eighth Circuit considers an appeal from this Court's Article III standing holding.

## CONCLUSION

For these reasons, Plaintiffs respectfully request the Court amend its Order to direct the entry of judgment under Rule 54(b) or include certification under § 1292(b) on the Dismissed Plaintiffs' claims and enter a stay of proceedings pending any appeal.

**DATED:**  March 19, 2020                    Respectfully submitted

/s/ Karl L. Cambronne
Karl L. Cambronne
Bryan L. Bleichner
**CHESTNUT CAMBRONNE, PA**
100 Washington Avenue South, Suite 1700
Minneapolis, Minnesota  55401
Telephone:  612-339-7300
kcambronne@chestnutcambronne.com
bbleichner@chestnutcambronne.com

*Plaintiffs' Liaison Counsel*

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
**BEASLEY, ALLEN, CROW,**
 **METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone:  334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@BeasleyAllen.com

Roland Tellis
David Fernandes
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, #1600
Encino, California  91436
Telephone:  818-839-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

*Plaintiffs' Interim Co-Lead Counsel*

Kirk J. Wolden
Clifford L. Carter
**CARTER WOLDEN CURTIS, LLP**
1111 Exposition Boulevard, Suite 602
Sacramento, California  95815
Telephone:  916-567-1111
kirk@cwclawfirm.com
cliff@cwclawfirm.com

Courtney L. Davenport
**THE DAVENPORT LAW FIRM LLC**
18805 Porterfield Way
Germantown, Maryland  20874
Telephone:  703-901-1660
courtney@thedavenportlawfirm.com

Charles E. Schaffer
Daniel C. Levin
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone:  215-592-1500
cschaffer@lfsblaw.com
dlevin@lfsblaw.com

*Additional Counsel for Plaintiffs and the Proposed Classes*